130 U.S. 482
 9 S.Ct. 575
 32 L.Ed. 985
 CENTRAL TRUST CO.
v.
SEASONGOOD.
 April 15, 1889.
 
 The principal questions upon this appeal arise out of an order directing the receiver in this cause to issue to certain parties his certificate of indebtedness for the amount of claims held by them against the property of which he was directed to take possession. The history of those claims, and the circumstances under which the above order was made, will appear from the following statement:
 Jacob Seasongood, Louis Seasongood, and Bernard G. Stall, by written agreement made August 29, 1876, bargained and sold to the Miami Valley Narrow-Gauge Railway Company, (whose name was afterwards changed to the Miami Valley Railway Company,) for the purpose of its road-way, three adjoining lots in the city of Cincinnati, Ohio, for the sum of $18,500, of which $2,000 was agreed to be paid in 30 days, and $16,500 at the end of 10 years; the latter sum to bear interest at the rate of 7 per cent. per annum, payable quarterly. The company also agreed to pay the taxes and assessments on the property. The vendors retained the legal title, but bound themselves to convey the premises upon the performance by the vendee on its part of the agreement of purchase. The company was put into immediate possession, and proceeded to construct its road over the lots. On the 1st of November, 1876, it mortgaged the road, its property, and franchises to secure bonds aggregating $500,000. In an action brought in the court of common pleas of Warren county, Ohio, that mortgage was foreclosed, and the mortgaged property sold. The title ultimately passed to the Cincinnati Northern Railway Company, a corporation created under the laws of Ohio, with authority to construct and operate a railroad from Cincinnati, through the counties of Hamilton, Butler, and Warren, to Waynesville in the latter county. That company, by mortgage in the nature of a trust-deed, executed November 17, 1880, conveyed its property, rights, and franchises to the present appellant, as trustee, to secure bonds aggregating $1,000,000. By a decree rendered by the superior court of Cincinnati, at general term, in an action brought May 2, 1881, by Jacob Seasongood, Louis Seasongood, and Bernard G Stall against the Miami Valley Railway Company, the Cincinnati Northern Railway Company, the trustees in the mortgage of November 1, 1876, the Central Trust Company, (the trustee in the mortgage of November 17, 1880,) and others, it was found that there was due to the plaintiffs in that action, under the above agreement with the Miami Valley Railway Company, for interest and taxes, the sum of $7,806.22; and it was adjudged that for the payment of the above sum, with interest, together with the balance of the principal sum, 'the plaintiffs have the first and best lien upon the lots of land described in said agreement;' that unless such sum, and the costs of the action, were paid within 90 days, the master 'shall, after the court has ascertained and determined the dimension and location of so much of the lots of land aforesaid as are not needed for the railroad, cause such portions of said lots as he shall find as aforesaid to be unnecessary for the railroad to be appraised and advertised, and sold upon execution at law;' and that, 'in the event that the sum realized from the sale of the portions of the lots of land aforesaid shall be insufficient to pay the sum of money and interest and costs last aforesaid, the entire railway, as owned and operated by the said Cincinnati Northern Railway Company, shall be sold as an entirety.' To this decree the Cincinnati Northern Railway Company and the Central Trust Company excepted, the latter corporation tendering its bill of exceptions, which was signed, sealed, and made part of the record. By a further decree, rendered October 3, 1883, the court found that certain portions of the lots, described by metes and bounds, were not necessary for the roadway of the Cincinnati Northern Railway Company, and ordered them to be appraised and sold separately, and, if they did not sell for enough to pay the above judgment, interest, and costs, then to sell the road as theretofore ordered. To that decree the defendants also excepted.
 The present suit was instituted in the circuit court of the United States, by the Central Trust Company of New York, on the 14th day of August, 1883, (the day after it filed its answer in the above suit in the superior court of Cincinnati,) against the Toledo, Cincinnati & St. Louis Railroad Company, the Cincinnati Northern Railway Company, the Spring Grove, Avondale & Cincinnati Railway Company, and Grenville D. Braman. The bill set out the above mortgage or deed of trust of November 17, 1880; the lease by the Cincinnati Northern Railway Company, for the term of 99 years, of the tracks, road-bed, rights of way, property, franchises, etc., of the Spring Grove, Avondale & Cincinnati Railway Company, and the mortgage executed May 25, 1881, by the Cincinnati Northern Railway Company to the Central Trust Company, of its property, rights, and franchises, for the payment of $1,000,000 of bonds theretofore issued by the Spring Grove, Avondale & Cincinnati Railway Company, secured on its road, the lien of the latter mortgage to be second only to that of the mortgage of November 17, 1880; a mortgage by the Cincinnati Northern Railway Company, of May 25, 1881, to the same trustee, of its property, rights, and franchises, to secure an issue of $1,000,000 of income bonds, payable out of the net earnings of the last-named railway company; and the consolidation of the above railroad companies under the name of the Toledo, Cincinnati & St. Louis Railroad Company, and the assumption by the consolidated company of the debts secured by each of said mortgages. The prayer of the bill was that all of said mortgaged property be sold, the proceeds to be applied to the payment of the bonds and coupons secured by the first of the above mortgages, and the balance, if any, to be paid to the Central Trust Company for the holders of bonds secured by the second and third mortgages; and that, until such sale was had, a receiver be appointed of all the property and premises embraced by the first mortgage, with power to maintain and operate the Cincinnati Northern Railway, including the road leased from the Spring Grove, Avondale & Cincinnati Railway Company, to collect rents, etc. Upon the motion of the Central Trust Company an order was passed, October 20, 1883, appointing a receiver, who was directed to take possession of, maintain, and operate the Cincinnati Northern Railway, 42 miles in length, constructed and to be constructed, and also the Spring Grove, Avondale & Cincinnati Railway Company. On the 8th of December, 1883, the following order was made by the circuit court in this cause:
 'It appearing to the court that the superior court of Cincinnati, in general term, in cause No. 2,350, wherein Jacob Seasongood, Louis Seasongood, and Bernard G. Stall are plaintiffs, and the Central Trust Company of New York and others are defendants, has found that certain real estate belonging to said plaintiffs, situate in the city of Cincinnati, Ohio, and being lots 13, 14, and 15 of S. Kemper's subdivision, in section 7, town. 3, fractional range 2, Miami purchase, is occupied by the Cincinnati Northern Railway Company under an agreement entered into between said plaintiffs and the Miami Valley Narrow-Gauge Railway Company, the predecessors of the said the Cincinnati Northern Railway Company, and that there is due to said plaintiffs thereon the sum of seventy-eight hundred and six and 22-100 ($7,806.22) dollars, with interest on the same from the 29th day of May, 1883, and that said plaintiffs are entitled to be paid on the 29th day of August, 1886, under said agreement, the further sum of sixteen thousand five hundred ($16,500.00) dollars, with interest thereon at the rate of 7 per cent. per annum, payable quarterly, from the 29th day of May, 1883, and all taxes they may be required to pay in the mean time; and it further appearing to this court that said superior court of Cincinnati has adjudged and decreed that said plaintiffs have a first and prior lien on said lots for the payment of said sums so found to be owing to them, and has ordered that in the event of so much of said lots as may not be necessary for the purposes of said railway company being sold and proving insufficient to pay said claims, then that the whole of said railway be sold to pay the same; and it further appearing to this court that the portion of said lots not necessary for the purposes of said railway are insufficient to pay said claims, and that an order of sale has been issued by said superior court directing the appraisement and sale of the whole of said railway, and that said parties are proceeding to bring the same to sale in pursuance thereof; and it further appearing to the court that such sale would be contrary to the best interests of all concerned, and that it is necessary to the operation of said road by the receiver heretofore appointed herein that said proceedings to sell should be stopped; and it further appearing to the court that said parties are willing to have so much of said lots as are not necessary for railroad purposes sold by the master commissioner appointed by said superior court in said cause, and the proceeds arising therefrom credited upon the certificate of indebtedness hereinafter provided to be issued to them, and to accept as full satisfaction of all their remaining rights under said decree (and enter satisfaction of the same, and convey said right of way to said railway) certificates of indebtedness, to be issued by the receiver herein, bearing interest at the rate of six (6) per cent. per annum, and payable when the said railroad shall be sold by the order of this court herein, unless sooner paid out of the earnings from the operation of said road or otherwise, as the court may order, provided the same be made a first lien upon said road, except only such other certificates as the court may find it necessary to issue, with all which they shall be of equal priority: Now, therefore, in consideration of the premises, it is ordered by the court that the master commissioner in said case in said superior court be authorized to proceed and sell under his order said outlying strips which were found not to be necessary for said right of way, and, after paying the costs of said action and taxes, to apply the balance of the purchase money on said certificate and pay the same to said Seasongoods and Stall. And by agreement it is ordered that in the event that said case in said superior court shall be taken to the supreme court of Ohio by motion for leave to file within thirty (30) days, and leave shall be granted, and bond given, then said certificate to be returned. Nothing herein contained shall prejudice the right of defendant to prosecute a proceeding in error in the supreme court of Ohio within said thirty (30) days. And it is ordered by the court that W. J. Craig, receiver herein, be, and he hereby is, authorized and directed to issue to said Jacob Seasongood, Louis Seasongood, and Bernard G Stall his certificate of indebtedness in the sum of twenty-five thousand one hundred and seventy-six and 20-100 ($25,176.20) dollars, that being the total amount of the said claims on this 8th day of December, 1883, and bearing interest at the rate of six per cent. (6) per annum from date, and payable on or before one year after date, to the order of said parties, said certificate to be equal in priority with all other certificates that may be issued herein, but to be prior to all other liens, and to be paid first upon sale of this road, and the same to deliver to said parties upon the entering by them of satisfaction of all their claims under said judgment and decree in said superior court, and the execution and delivery by them of a proper deed of conveyance of said lots to said Cincinnati Northern Railway Company; and it is further ordered that upon the consummation thereof the said the Cincinnati Northern Railway Company shall stand subrogated to all the rights the said parties had against the said the Miami Valley Narrow-Gauge Railway Company and the stockholders thereof.'
 Jacob Seasongood having died, the court, by an order made February 12, 1884, directed the receiver to issue the certificate provided for in the previous order to Louis Seasongood and Bernard G. Stall, survivors, 'upon the same terms and conditions named in said original order.' On the 20th of November, 1885, the following order was made: 'It appearing to the court from the report of the master commissioner of the sale of the Cincinnati Northern Railroad that there are sufficient of the proceeds of said road to pay the full amount of the claim of J. and L. Seasongood and Stall and interest, for which a receiver's certificate was issued to Louis Seasongood and B. G. Stall, survivors of Jacob Seasongood, after paying all other certificates of the receiver of said Cincinnati Northern Railroad Company; that said money remains unpaid; that since said decree ordering said certificate to be issued said B. G. Stall and said Jacob Seasongood have died, leaving said Louis Seasongood the sole survivor; that the certificate was issued to Louis Seasongood and B. G. Stall as survivors after the death of said Jacob Seasongood, and that out of the proceeds of sale of said outlying strips of land on July 8, 1884, there was paid to said Louis Seasongood and B. G. Stall, surviors, the sum of $525.33, which is all that was left after paying the costs of said action in the superior court of Cincinnati and some taxes on said strips, which should be credited as of that date upon said certificate, which leaves a balance, with interest computed to November 12, 1885, of $27,562.90 due and owing on said decree: It is therefore ordered by the court that the purchasers of said railroad pay to the clerk of this court said sum of $27,562.90, with interest from November 12, 1885, until paid, and that said clerk pay forthwith to said Louis Seasongood, survivor, said sum of $27,562.90, and until so paid he is entitled and shall be paid by said clerk 6 per cent. interest thereon from November 12, 1885. It appears further to this court that said case in said superior court of Cincinnati was not carried to the supreme court of Ohio. Thereupon the Central Trust Company, complainant, prays an appeal in open court of this cause to the supreme court, and this court grants the appeal, and fixes the amount of bond at double the amount of said claim and interest, to wit, fifty-five thousand and five hundred dollars, which bond shall operate as a supersedeas of this order and decree.'
 It appears from the record of the case in the superior court of Cincinnati that the parts of the lots, ascertained not to be necessary for the road-way, were sold by the commissioner of that court,—one bringing $861, and the other $201; and that the sale was confirmed June 17, 1884. On the 29th of March, 1884, a decree of foreclosure and sale was entered in the court below, and pursuant thereto the Cincinnati Northern Railway was sold on the 27th of June, 1885. It brought the sum of $200,000, which was less than its value, the purchasers being the bondholders represented by the Central Trust Company. It is stipulated by the parties that the portion of the proceeds of the sale, which by the order of November 20, 1885, was directed to be paid to the appellee, would otherwise go to the appellant.
 zWm. M. Ramsey and Lawrence Maxwell, Jr., for appellant.
 Jackson A. Jordan and C. B. Matthews, for appellee.
 Mr. Justice HARLAN, after stating the facts in the foregoing language, delivered the opinion of the court.
 
 
 1
 The motion of appellee to dismiss this appeal is denied. If, as contended by him, the order of December 8, 1883, was one from which an appeal would lie, the appeal prayed and allowed on the 20th of November, 1885, would bring that order before us; for, although the bond required by the court was made to operate as a supersedeas only of the order of the latter date, the appeal asked and granted was 'of this cause,'—that is, of the whole cause as far as it had then progressed. Conceding appellee's lien on the lots to be prior to its lien on so much of the railroad as crossed those lots, the appellant denies that appellee had a lien upon the entire road of the Cincinnati Northern Railway Company. The proceeds of the sale of the whole road, it is insisted, must be distributed between the appellant and the appellee, upon the basis of the proportionate value of the parts upon which their respective liens rested; not necessarily the mathematical proportion of the 320 feet of the railroad covering the lots in question to the entire length of the road,—42 miles,—but in the proportion of the fair value, all things considered, of the former to the latter. The precise mode of ascertaining this value was not suggested in the argument. We are of opinion that the appellant is not in a condition to raise the question just stated. It was a party to the suit in the state court, the decree in which provided for a sale of the entire road in the event the sum found to be due the present appellee was not paid by the sale of such parts of the lots in question as were not needed for the railroad. That decree, even if erroneous, was binding upon all the parties to the suit in which it was rendered, until modified or reversed by the supreme court of Ohio. It was not open to collateral attack by any of those parties in a separate suit brought by them in the circuit court of the United States after the jurisdiction of the state court attached. No order in the former court could interfere with or suspend the sale which the state court had directed to be made. The only way in which such suspension could have been effected was by means of an arrangement that would be satisfactory to the present appellee, in whose behalf the state court had ordered a sale of the entire road. The order made in the circuit court on the 8th of December, 1883, shows upon its face that that court was informed as to the exact relation of the parties to the suit in the state court. It declared, without objection by any of the parties, that the sale then about to take place of the entire road, under the order of the state court, 'would be contrary to the best interests of all concerned,' and that it was necessary to the operation of the road by the receiver of the circuit court that the proceedings in the state court for a sale be stopped. The mode adopted to effect that end is indicated in the above order. We need not, however, stop to inquire whether it was proper for the circuit court to issue receiver's certificates for claims of the character of those held by the appellee. Upon that subject we express no opinion. We are relieved of any duty to consider that question, because it is apparent that the order of December 8, 1883, was the result of an agreement or arrangement between the appellee and the Central Trust Company,—the latter representing in this cause the holders of bonds secured by the mortgage of November 17, 1880,—and also because of the surrender by the appellee, in consideration of the receiver's certificate for the amount of his claims, of the rights accorded to him by the decree in the state court. The appellee cannot be restored to his rights under the decree of the state court, and it would be inequitable to permit the appellant, representing those who purchased the property under the decree of the circuit court, now to raise any question as to the validity of the receiver's certificates, which it agreed might be issued to the appellee. It remained quiet for nearly two years, and until after the property had been sold, and after the sale had been confirmed to those it represented, before making an issue as to the propriety or validity of the order of December 8, 1883. The bondholders are concluded, under the circumstances disclosed in the record, by what their representative did, or assented to being done, in order to induce the appellee to surrender the rights secured by the judgment of the state court. The decree of the circuit court is affirmed.