IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

MIDDLE DIVISION.

## NASHVILLE, DECEMBER TERM, 1911.

C. C. SLAUGHTER, *Receiver, v.* LOUISVILLE & NASHVILLE
RAILROAD COMPANY.

*(Nashville.* December Term, 1911.)

1. **BANKRUPTCY.** Receiver may be authorized by decree to
sue for debts due the bankrupt.

A decree in bankruptcy, authorizing a receiver to institute suit to
collect any indebtedness due the bankrupt or receiver, author-
izes him to sue a common carrier for the value of freight lost
by negligent handling. (*Post, pp.* 293-295.)

2. **SAME.** Same. Decree in federal court authorizing trustee
to sue for debts due the bank cannot be collaterally attacked
in the State courts.

A decree in bankruptcy, authorizing a receiver to institute suit
to collect any indebtedness due the bankrupt or receiver, is
not subject to collateral attack in a suit by him in a State
court against a common carrier for the value of freight lost by
negligent handling, even if such decree was, by the federal
district court, based upon an erroneous construction of the
bankruptcy act as to the powers which may be conferred upon
receivers in bankruptcy; for the State courts do not sit as
reviewing courts in bankruptcy, and they have no jurisdiction
to revise the orders of the district court of the United States
in such matters. (*Post, pp.* 295-301.)

Cases cited and approved: Railroad v. Ferry Co., 108 U. S., 18;
Central Trust Co. v. Seasongood, 130 U. S., 482; Barbour v.

(292) [125 Tenn.

Slaughter v. Railroad.

Bank, 45 Ohio St., 133; Attorney-General v. Insurance Co., 77 N. Y., 272.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

STOKES & STOKES, for complainant.

F. M. BASS and JNO. BELL KEEBLE, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the complainant, as receiver in bankruptcy of the Tennessee Packing & Stockyards Company, to recover from the Louisville & Nashville Railroad Company the value of a car load of meat intrusted to said railroad and alleged to have been negligently handled, and lost.

The shipment was made by the packing company prior to the beginning of the bankruptcy proceedings against it, and the suit was brought prior to any adjudication of bankruptcy.

A demurrer was filed to the bill, which challenges the right of a receiver in bankruptcy to bring a suit of this character; the point being that such a receiver is merely a caretaker or custodian, with no authority, under the bankruptcy act, to maintain plenary suits, and that proceedings of this sort can only be instituted by the trustee in bankruptcy, when duly elected. This demurrer was overruled, and an appeal taken to this court.

It appears that, shortly after the petition in bank-ruptcy was filed, the complainant and one Hawkinson were appointed receivers of the company. Later Hawkinson resigned, and complainant alone was continued in charge as receiver. Still later than this an application appears to have been made to the bankruptcy court, or district court of the United States, to enlarge the powers of complainant as receiver of this company. Acting upon this application, that court pronounced the following decree:

"This cause came on for final (?) hearing upon motion of counsel for C. C. Slaughter, receiver of the Tennessee Packing & Stockyards Company, to enlarge and increase the powers and duties of said receiver; when the court is of opinion that said motion should be allowed. It is accordingly adjudged and decred by the court that the powers and duties of C. C. Slaughter, as receiver of the Tennessee Packing & Stockyards Company, be, and they are, enlarged and increased, so that, as receiver, he is authorized and directed, whenever necessary, to institute suit to collect any indebtedness that may be owing to the Tennessee Packing & Stockyards Company or said Slaughter as receiver thereof, and that he be further authorized and directed to take any and all steps that may be necessary looking to the recovery of and placing in his possession any property of any kind belonging to the said Tennessee Packing & Stockyards Company."

It must be conceded that it was the purpose of the bankruptcy court, by this decree, to confer on the com-

plainant, as receiver, authority to bring suits such as the one at bar. This proposition is not controverted by counsel for the defendant. Manifestly, the language of the decree authorizes suits of this character to be brought by the receiver.

It is urged, however, on behalf of the defendant, that the bankruptcy court has no power to confer upon a receiver in bankruptcy authority such as was attempted to be given this one by the decree quoted. It is said that the bankruptcy act, in providing for receivers and their duties, limits their powers as before indicated, and that the court, acting under the statute, could not go beyond its provisions and lawfully clothe this officer with such authority as here attempted with respect to the bankrupt estate. The argument is that the collection and administration of the estate, particularly the bringing of plenary suits, are duties placed upon the trustee in bankruptcy by the act of congress, and authorities are cited in support of this view.

The sections of the bankruptcy act respecting the power of the district courts to appoint receivers and defining the duties of the latter are as follows (chapter 2, section 2):

Subsec. 3: "Appointing receivers or marshals upon application of parties in interest, in case the court shall find the appointment absolutely necessary for the preservation of the estates, to take charge of the property of the bankrupt after the filing of the petition and until it is dismissed or the trustee is qualified."

Subsec. 5.  "Authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals or trustees, if necessary in the best interests of the estates, and allow such officer additional compensation for such services, as provided in section 48 of this act."

Subsec. 7: "Cause the estates of bankrupts to be collected, reduced to money and distributed; and to determine controversies in relation thereto, except as herein otherwise provided."

It is argued for the defendant that the court was empowered, under subsec. 5, to appoint a receiver to conduct the business of the bankrupt for a limited time, and that it is manifestly impossible for a receiver to continue a business without collecting funds due and owing to the business, and the right to make these collections and bring suit to enforce them is necessarily implied from the authority to conduct the business.

The decisions of the inferior courts of the United States throughout the country do not appear to be in entire harmony as to the proper interpretation of these sections, although it is fair to say that the weight of authority seems to sustain the position of the defendant. It must be remembered, however, that we do not sit as a reviewing court in bankruptcy, and we have no jurisdiction to revise the orders of the district court of the United States in such matters.  Much of the argument, therefore, made for defendant, that would have great weight if we sat as an appellate court in bankruptcy reviewing this order, cannot be considered by us at all.

As previously observed, the decree of the bankruptcy court undoubtedly conferred upon the complainant authority to bring and maintain this suit.   Can we in this proceeding go behind this decree of a court of paramount jurisdiction in such matters and  collaterally  question the   receiver's   authority    Defendant's  contention is nothing more or less than a collateral attack upon the decree of the district court of the United States authorizing its receiver to bring suits of this character.

Mr. High has observed that:

"The general principle, applicable to all judicial proceedings, that the propriety of an order or decree made in a cause in which the court has jurisdiction cannot be challenged collaterally, applies with equal force to an order appointing a receiver, made by a court of competent jurisdiction.   And when a court having jurisdiction of the parties and of the subject-matter appoints a receiver over the property or funds in controversy, the validity of such an appointment and the propriety of the order cannot be successfully challenged in a collateral suit or proceeding."   High on Receivers (4th Ed.), section 39a.

Numerous applications of this doctrine are contained in the same work in section 39b.

The same author says:

"It follows, therefore, in an action instituted by a receiver in matters connected with the trust, as to obtain possession of funds belonging to him in his official capacity, if proper record evidence of his appointment is produced, it will be regarded as conclusive upon the

question of the reeciver's right. The court proceeds in such a case upon the ground that it is immaterial whether the appointment was proper or improper in the first instance, and while it remains a subsisting order of a court of competent jurisdiction it is not to be questioned, unless by appropriate proceedings to test its validity." Id., section 203.

Illustrating the extent to which the courts have gone in applying this rule, we quote the following language from the supreme court of Ohio:

"Unless it appears manifestly clear to us that the order of appointment was an absolute nullity, by reason of the entire absence of jurisdiction in the court that made it, it cannot be assailed in this proceeding." *Barbour, Receiver,* v. *Nat. Exchange Bank,* 45 Ohio St., 133, 12 N. E., 5.

The New York court of appeals has said:

"If the decree was improvidently granted, or if for any reason it should be set aside or modified, relief can be had, upon application, by any parties in interest, to the court by which it was made; but the regularity of the appointment of the receiver cannot be questioned by any other tribunal." *Attorney-General* v. *Guardian Mutual L. Ins. Co.,* 77 N. Y., 272.

This is the universal rule, and many authorities are cited by Mr. High in support of the text quoted.

So it is that the validity of a receiver's appointment, or the propriety of his appointment, or, in our opinion, the scope of his authority prescribed in the order of his appointment, cannot be questioned in another tribunal,

unless the order or decree was void. All such attacks must be made in the court appointing the receiver, or in one having revisory jurisdiction over the action of that court.

It cannot be successfully urged that this decree of the bankruptcy court, conferring these powers upon its receiver, is a void decree, and for this reason subject to collateral attack. There is no question but that the bankruptcy court had jurisdiction of the subject-matter and of the parties necessary to authorize a decree appointing this receiver and prescribing his duties.

If, in undertaking to define the powers of the receiver, the court went beyond what defendant conceives to be the sanction of the act of congress, still, at most, this is merely a matter of construction. A decree of a court of competent jurisdiction is not void or a nullity merely because it erroneously or improperly construes a legislative act. Although another court may be of opinion that a co-ordinate court has improperly construed an act, even if it entertains that opinion, such other court cannot permit a collateral attack upon a judgment or decree merely because it is based on such construction.

Upon this subject it is said:

"A judgment at law cannot be impeached collaterally in equity. And, conversely, the validity of a decree rendered by a court of equity cannot be impeached in a collateral action at law. A judgment of a State court, no question as to its jurisdiction being involved, cannot be overhauled or corrected in a collateral proceeding in a federal court. The courts of the United States cannot

lawfully treat as nullities the judgments of the courts of the several States, rendered in suits where the latter have jurisdiction of the cause and the parties, even if they are founded upon an erroneous construction of the bankruptcy act or any other statute of the United States. The remedy for the correction of the error is by writ of error to the supreme court of the United States. And it is equally clear that the reverse of this rule must hold good; that is, that the judgments and decrees of the federal courts, in cases where their jurisdiction is not disputed, must be impervious to collateral assailments in the courts of the States, although, for example, they may proceed upon an erroneous construction of a State constitution or statute." Black on Judgments, vol. 1, section 251.

See, also, the same author, section 261, to the effect that judgments cannot be collaterally attacked for errors and irregularities; a number of illustrations being given in the text.

The supreme court of the United States has held in effect that if a statute be erroneously construed or ignored by a State court, so as to violate a provision of the federal constitution, still that furnishes no ground for collateral attack upon such judgment of a State court in an inferior federal court; but the only way to attack said judgment is by proper revisory proceedings upon writ of error to the supreme court of the United States itself. *Railroad* v. *Ferry Co.,* 108 U. S., 18, 1 Sup. Ct., 614, 617, 27 L. Ed., 636. Other cases along the same line are *Central Trust Co.* v. *Seasongood,* 130 U.

---

Slaughter v. Railroad.

---

S., 482, 9 Sup. Ct., 575, 32 L. Ed., 985, and *Kittredge* v. *Emerson*, 15 N. H., 227.

Upon the whole case, we are of opinion that, in bringing this suit, the complainant, as receiver of the bankruptcy court, was acting within the scope of the decree of the court by which he was appointed; that this decree was made by a court having jurisdiction of the necessary parties and of the subject-matter; that it is a valid decree, and at most can be criticised only as an erroneous construction of an act of congress (as to whether it is an erroneous construction, we express no opinion); and that accordingly, under the authorities quoted, it is not subject to collateral attack in this proceeding.

It results that there was no error in the decree of the chancellor, and it will be affirmed.