# Fidelity & Deposit Co. v. Mobile County.

*Action on Official Bond.*

1. *Surety on official bond; when bound by its recitals.*—Where a tax collector executes an official bond in compliance with a requirement of the probate judge professing to be predicated on an address of the grand jury of the county under sections 3110 *et seq.* of the Code, and the bond recites in substance that it was executed on the address of the grand jury for the execution of an additional bond by the tax collector, the surety on such bond is cut off by the recitals therein from showing, when sued on the bond, that it is lacking in consideration in that the address of the grand jury had spent its force before its execution—the record showing that the probate judge basing his action on the address of the grand jury required an additional bond and that the bond sued on was given upon that requirement, and under it the tax collector continued in office as without it he would have been immediately ousted.

[Fidelity & Deposit Co. v. Mobile County.]

2. *Judgment; when cannot be collaterally assailed.*—Judgments cannot be collaterally assailed on the ground that error was committed in their rendition, or that the evidence did not support them. The order or judgment of a board of revenue amending *nunc pro tunc* a prior erroneous order of the same board levying a tax, is fully within the protection of this principle from collateral attack, and it must stand as the order or judgment of the board whether it was supported by any evidence or not, its integrity not having been destroyed in any direct proceeding for that purpose.

3. *Tax collector; not presumed that he has embezzled funds.*—As against the county or State there is no presumption that a tax collector has misappropriated, converted to his own use, embezzled taxes collected by him, from the mere fact that he has failed to pay over such taxes at the time he was required by law to pay them over. To the contrary if he carries such sums past one day of settlement, the presumption is that he still has the money and will pay it over on the next day of settlement; and if he has such money in hand at any such subsequent time when an additional bond is required of him, given and approved, his failure thereafter to account for and pay over the same as required by law, is a default occurring subsequent to the execution of such bond for which the sureties thereon are liable.

4. *Certificate to tax book; authority to collector.*—Where the tax books are made out, examined, corrected and allowed by the board of commissioners, and contain the certificate appended in substantial compliance with the statutory requirement, and are delivered to the tax collector, the certificate, if any is necessary, vests in the tax collector the power and authority to collect the taxes set down in the books, and renders him liable for failing to collect the same.

5. *Replication; if plaintiff proves one of three defendant takes nothing by answer.*—The failure of a plaintiff to prove one of three replications to a plea, does not entitle the defendant to judgment on the plea; if the plaintiff proves one of several replications on which issue is joined the plea is answered and the defendant takes nothing by it.

APPEAL from Mobile Circuit Court.

Tried before Hon. WM. S. ANDERSON.

The case is fully set out in the opinion.

BESTOR & GRAY, for appellant, cited, in their argument to show that the surety on the bond of the tax collector was not liable for defaults and misappropriations

10

of the tax collector occurring prior to the execution and
approval of the bond upon which he was surety, the fol-
lowing authorities.—*Randolph v. Billing,* 115 Ala. 682;
*Governor v. Robbins,* 7 Ala. 79; *Dumas v. Patterson,* 9
Ala. 484; *Townsend v. Gibson,* 14 Ala. 334; *Townsend v.
Everett,* 4 Ala. 607; *U. S. v. Boyd,* 15 Peters 187; *Myers
v. U. S.,* 1 McLean 493; 2 Brandt on Suretyship, p. 752.
And to show that clerical errors can only be corrected
*nunc pro tunc* when the error is apparent on the record,
or there is quasi record evidence to authorize the amend-
ment, cited, *Lilly v. Larkin,* 66 Ala. 122; *Herring v.
Cherry,* 75 Ala. 376; *Browder v. Falkner,* 82 Ala. 259;
*Emerson v. Heard,* 81 Ala. 443.

L. H. & E. W. FAITH, *contra.*—No brief came to the
hands of the reporter.

McCLELLAN, C. J.—This action is prosecuted by
the county of Mobile against the Fidelity & Deposit
Company of Maryland on a bond executed by E. B. Lott
as principal and said company as surety conditioned for
the faithful discharge of the duties of the office of tax
collector of Mobile county by said Lott. The breaches
of said bond assigned in the complaint are, in substance :
*first,* that said Lott failed to collect the taxes assessed
for and due to said county and to pay over the same to
the county treasurer; *second,* that Lott, as said tax col-
lector, collected, to-wit, the sum of nineteen thousand,
one hundred and sixty-four and 48-100 dollars, which
was assessed and due the county as taxes for the year
1896, and failed to account for and pay the same over
to the county treasurer on or before the first day of July,
1897, and, *third,* that said Lott failed to make final set-
tlement with said county treasurer, as it was his duty
under the law as such tax collector to do, on or before
the first day of July, 1897.

On the trial below it was admitted that Lott failed to
make the final settlement required by law with the
county treasurer on or before July 1st, 1897; and it fol-
lows, of course, that the plaintiff was entitled to a ver-
dict and judgment upon that assignment of breach, if the
bond was a valid obligation of the defendant. Hence it

is that the defense that the bond was a *nudum pactum* for want of consideration is the only defense interposed by the defendant in bar of the action. All the other matters of a defensive nature attempted or suggested by the defendant had reference only to the amount of damage to be assessed by the jury.

Little is necessary to be said in disposition of the alleged want of consideration for the execution of the bond by Lott and the defendant. The recitals of the instrument itself cut off the defendant from showing that it is lacking in consideration. The bond was given by Lott in compliance with a requirement of the judge of probate professing to be predicated on an address of the grand jury of the county under sections 3110 *et seq.* of the Code. The instrument in substance recites that it was executed on the address of the grand jury for the execution of an additional bond by Lott as tax collector, the record shows that the probate judge, basing his action upon the address of the grand jury, required an additional bond and that this bond was given upon that requirement, and under it Lott continued in the office of tax collector, as without it he would have been immediately ousted. On this state of case the defendant is estopped to say that the address of the grand jury had spent itself and become ineffective before the requisition was made, that therefore the requisition was of no efficiency, there being no grand jury address to support it, that there was no legal occasion for the execution of the additional bond and, of consequence, the bond which was given was without consideration and void: from all this the defendant has precluded itself by the recitals of the instrument it executed.—*Williamson v. McArthur,* 37 Ala. 299; *Plowman v. Henderson,* 59 Ala. 559; *Burnett v. Nesmith,* 62 Ala. 261; *Person v. Thornton,* 86 Ala. 308; *Kling v. Connell,* 105 Ala. 590; *Bruce v. United States,* 17 How. 437; Murfree on Official Bonds, § § 322, 437, 583, 672.

The other matters of defense attempted to be interposed on the trial were addressed, as we have said, to the mitigation of damages merely. One of these was rested on this state of facts: The board of revenue levied a tax for county purposes, for the year 1896, of

fifty cents on each one hundred dollars in value of tax-able property. Through clerical misprision this levy was entered on the minutes of the board as being at the rate "of 50 *per centum* of that imposed by the State." This entry, made on July 13, 1896, was by the board, on June 6th, 1897, amended *nunc pro tunc* so as to read as follows: "That the amount of taxes necessary for the expenses of the county for the current year requires a levy of a tax of one half of one per cent upon the values in this county assessed for revenue to the State. as shown by the book of assessment, and a tax of one half of one per cent upon the values aforesaid is hereby levied for county purposes." The tax collection books were made out on the basis of a levy of one half of one per cent on assessed values, the levy which was actually made as shown by the amended minute entry of the levy, and not upon a basis of fifty per cent of the State levy as set down in the erroneous entry on the minutes made July 13, 1896. These books went into the hands of Lott as tax collector and he proceeded to collect for the use of the county fifty cents—or one half of one per cent—on the hundred dollars of assessed values of property. It is now insisted that the board levied a tax of only fifty per cent of the State levy, or twenty-seven and one half cents on the hundred dollars of assessed values, that the amendment of the minute entry of the levy was unau-thorized and the levy evidenced thereby is void because the board made said amendment *nunc pro tunc* without having before it any competent evidence to support the same, and finally that inasmuch as Lott had paid over to the county as taxes collected as much as or more than the amount the county was entitled to under a levy of twenty-seven and one-half cents on the hundred dollars there can be no recovery in this case except of nominal damages for the technical default of Lott in respect of making a settlement with the treasurer on or before July 1, 1897. It is obvious of course that this whole theory is rested upon the contention that the board of revenue had no authority to make the amendment *nunc pro tunc* and this contention is based upon the supposed absence of competent evidence to authorize or justify the judg-ment or order *nunc pro tunc*. And the whole position

fails utterly when brought to the touch of the elementary general principle that judgments cannot be collaterally assailed upon the ground that error was committed in their rendition, or that the evidence did not support them. The order or judgment of the board of revenue of June 6th, 1897, amending *nunc pro tunc* the erroneous entry of July 13th, 1896, is fully within the protection of this principle from the collateral attack sought to be made upon it in this case; and it must stand as the order or judgment of the board of July 13, 1896, levying a tax of one-half of one per cent. on assessed values whether it was supported by any evidence at all or not, its integrity not having been destroyed in any direct proceeding for that purpose.—*Ware et al. v. Kent,* 26 So. Rep. 208.

The question whether the evidence upon which the entry of the order or judgment of July 13th, 1896, was amended *nunc pro tunc* was competent not being involved in this case, we do not at all consider it.

It is insisted for appellant in mitigation of damages that the defendant is not liable for any default of Lott committed prior to June 22nd, 1897, when the bond sued on was accepted and approved, the statute providing that an additional bond of this sort shall be of force and effect from the time of its approval. For appellee it is contended that even though Lott had misappropriated the county's money before the date named, the duty was still on him to account for and pay over to the treasurer on July 1st, 1897, all that was due from him to the county, that this bond was security for the performance of that duty, and the surety upon it is responsible for Lott's default in the performance of it to the extent of all county funds which came to Lott's hands whether embezzled by him prior to June 22d or in his hands on and after that day. The question thus mooted is not without difficulty, but we do not find that it is presented by this record. There were pleas interposed by the defendant which sought to raise it, and there were rulings of the trial court adverse to such pleas; but these rulings do not present the question because in the first place the pleas while professing to go to the whole complaint did not answer any of the assignments of breach of the bond

in full and did not answer the third assignment at all; and, in the second place, the matter was not proper for a special plea, but should have been presented under the general issue. And it is claimed that it is presented by offers and attempts to introduce evidence upon it under the general issue and the exclusion of such proposed evidence by the trial court; but we do not find this contention sustained by the record. The record shows in this connection only the following: (1) The defendant offered the testimony of Lott and other witnesses to show that divers and various amounts of taxes, aggregating $7,510.77, which are among the items sought to be recovered of his surety in this action, were collected by him from sundry tax-payers prior to January 1st, 1897, and were not accounted for or paid over by him. (2). The defendant proposed to prove by certain bankers the amounts of money Lott as tax-collector had on deposit with them on June 22d, 1896. And (3) the defendant proposed to show where Lott as tax collector of Mobile county kept the money he had on hand, the defendant's counsel stating that they proposed to show in connection with the evidence offered that Lott had certain sums of money on hand on June 22d, 1897, the date of the approval of the bond. All this proposed testimony was excluded by the court as being irrelevant. The trial court was of the opinion—or, at least, might well have based this ruling upon the ground—that none of this proposed testimony tended to show that Lott had prior to June 22d, 1897, embezzled the taxes theretofore collected by him; and we concur in that opinion. As against the county or State there is no presumption that a tax-collector has misappropriated, converted to his own use, embezzled taxes collected by him from the mere fact that he has failed to pay over such taxes at the time he was required by law to pay them over. To the contrary if he carries such sums past one day of settlement—if he fails to pay them over on January 1st for instance—the presumption is that he still has the money and will pay it over on the next day of settlement—the 1st day of July, for instance; and if he has such money in hand at any such subsequent time when an additional bond is required of him, given and approved, his failure there-

after to account for and pay over the same as required by law is a default occurring subsequent to the execution of such bond for which the sureties thereon are liable. And the fact that he had only a certain sum on deposit at one or two specified banks, at the time the bond was given, manifestly has no legitimate tendency to show that he had no other funds of the county at that time, or that he had embezzled the other moneys collected by him. It is upon these considerations that we base our conclusion that to say the least an additional bond is security for all moneys not actually converted to the principal's own use prior to its approval, and that the facts that moneys were collected and should have been but were not paid over prior thereto and that at the date of approval he did not have such funds on deposit with the banks or persons with whom he usually deposited his collections are irrelevant to show a conversion and default by him of and in respect of such moneys before the execution of the new and additional bond.

The tax books delivered to Lott are not set out in the transcript, but enough therein appears to show that they were made out, examined, corrected and allowed by the board of commissioners; and, taken in connection with the evidence of the corrections made by the board, the noting thereof in the books, the extension of the amounts opposite the name of each tax-payer, etc. the certificate appended to the books is a substantial compliance with the statutory requirement of force at the time. It follows that the books having been thus examined, corrected and allowed by the board, this certificate, assuming the necessity for any certificate, vested in Lott the power and authority to collect the taxes set down in the books and rendered him liable for failing to collect the same.

The failure of the plaintiff to prove one of three replications to a plea, the others whether general or special being proved, does not entitle the defendant to judgment on the plea: If the plaintiff proves one of several replications on which issue is joined the plea is answered and the defendant takes nothing by it. Hence the plaintiff's failure to prove the third replication to the 14th plea which set up a special consideration for the execu-

tion of the bond by the defendant was innocuous since the general replication to said plea was proved and the plea disproved by the recitals of the bond sued on and so far as that plea is concerned the plaintiff was entitled to judgment whether the averments of the special replication were proved or not.—*Glass v. Meyer Sons & Co.*, present term.

If it be true, as contended for appellant, that the monthly reports made by Lott to the county treasurer were not required by law and that therefore they were not competent evidence in this case, or if it be true, as further contended by appellant, that copies of these reports should not have been received in evidence assuming the original to be competent, the appellant can take nothing by this assumed error of the court since these papers were in the first place merely cumulative of other uncontroverted evidence and in the second place they went to show payments made by Lott and thus to diminish the recovery against his surety and hence so far from the error being prejudicial to the defendant it was of affirmative benefit to it.

The remaining exceptions to the court's rulings on evidence are so obviously without merit, the rulings being either clearly correct or clearly not involving injury to the defendant, that we deem it unnecessary to discuss them in detail.

The evidence properly before the jury entitled the plaintiff to a verdict in the sum for which the verdict was rendered, if they believed the evidence, and the court in effect properly so charged them.

We discover no error in the record entitling appellant to a reversal, and the judgment of the circuit court must be affirmed.