WALKER COUNTY, ALA., v. FIDELITY & DEPOSIT CO. OF MARYLAND.

(Circuit Court of Appeals, Fifth Circuit. April 16, 1901.)

No. 982.

1. DEFAULTING TAX COLLECTOR—COMMISSIONS—RIGHTS OF SURETIES.

Code Ala. 1896, § 4097, provides that a collector of taxes may retain his commissions when he makes payment into the state treasury. Section 4037 provides that he must also, on or before January 10th and April 10th in each year, account to the auditor under oath for the amount of taxes, etc., and on such accounting shall be allowed by the auditor the amount then due him for commissions, fees, etc. *Held*, both in view of the statute, and independent thereof, that a defaulting tax collector was not entitled to commissions on money which he failed to pay over, and his sureties could not claim a credit therefor.

2. SAME—LIABILITIES OF SURETIES.

Code Ala. 1896, § 4035, requires a tax collector within five days after each monthly report, beginning in November each year, to pay over taxes collected, and sections 4038, 4039, provide for a final settlement in July, and require payment of the balance found due. *Held*, in view thereof, that a collector's failure to pay over a monthly collection continued the obligation to pay thereafter, particularly on his final return in July, and his sureties on a bond executed in the following month were equally liable therefor as for a subsequent default, and, even if the obligation did not continue, his use of money collected subsequent to the bond to make good a delinquency which occurred prior thereto was a misapplication, for which the sureties were liable.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

This suit was brought by Walker county, Ala., against the defendant in error, the Fidelity & Deposit Company of Maryland, as surety on the official bond of J. W. Davis, tax collector of said county. A trial was had before a jury, which resulted in a verdict and judgment for plaintiff in error in the sum of $5,560.25, from which judgment the plaintiff prosecutes this writ. The assignments of error relate only to the refusal of the court to give certain written instructions to the jury asked by the plaintiff, and to the giving of certain written instructions requested by the defendant, and to certain portions of the charge of the court to the jury given ex mero motu. These assignments of error, 14 in number, raise only two points, and both of these refer to two credits claimed by the defendant in error. The first is a credit claimed for commissions of the tax collector (defendant's principal). These commissions are fixed and allowed by law. Code Ala. 1896, § 3997, which

reads as follows: "Commissions of Tax Collector on General and Special Taxes.—The tax collector shall be entitled to receive commissions on taxes collected by him as follows, to wit: In counties where collections do not exceed twelve thousand dollars, the rate of commission shall be eight per cent. on the first thousand dollars, four per cent. on the second thousand dollars, and two per cent. on the remainder. In counties where the collection exceeds twelve thousand dollars, the commission shall be as above declared up to twelve thousand dollars, and one and one-half per cent. on the remainder up to sixty thousand dollars, and on all above sixty thousand dollars, one per cent. He shall also be entitled to receive two per cent. on all collections made by him of special taxes, whether such special taxes be levied for the state or county, to be paid out of such special taxes. The collector may retain his commissions upon collections when he makes payments into the state treasury." The amount of commissions claimed is not disputed, nor the fact that they are given by law. The contention is that, because the tax collector defaulted, he forfeited them. The other credit claimed by the defendant and allowed by the jury is $1,917.48. This amount arose in this way: The tax collector (defendant's principal) was required to give a new bond, and on the 18th day of April, 1898, a bond of date April 12, 1898, with the defendant as surety, was duly approved. The defendant became liable for the conduct of the tax collector from and after that date. Code Ala. 1896, § 3130. Prior to the execution of this bond, namely, on the 4th of April, 1898, the tax collector, as shown by his report to the probate judge, made that day, returned the amount of $1,917.48 taxes collected for the month of March, 1898. On the trial the defendant, as surety of said tax collector, was charged with the entire assessment rolls of the county for the year 1898. The taxes on these rolls became due October 1, 1898. The total debt against defendant created by these tax rolls aggregated $26,099.39. After deducting for insolvencies, errors, commissions, cash, etc., it left a balance against the defendant of $7,696.45. In addition to the credits allowed, it was contended that the defendant was entitled to $1,917.48, which was paid by the tax collector on the 29th of October, 1898, as shown by the testimony of John A. Gravlee, the clerk of the county treasurer, which we give in full as follows:

"John A. Gravlee testified for the plaintiff: That he was clerk to the county treasurer of Walker county. That the book he had with him, which he produced before the jury, was the treasurer's book of said county, and that he knew of the correctness of the account of James W. Davis, tax collector, as shown in said book, all of the entries therein having been made by him. The entries on said account for the tax year 1898 were as follows:

|  |  |  | Cr. |  |  |
|---|---|---|---|---|---|
| 1898. | Dec. | 2. | By cash, Oct. report | $ 954 | 46 |
|  | Dec. | 10. | By cash, Nov. report | 868 | 40 |
| 1899. | Jan. | 4. | By cash, Dec. report | 10,770 | 82 |
|  | Feb. | 4. | By cash, Jan. report | 1,139 | 97 |
|  | Mar. | 6. | By cash, Feb. report | 677 | 12 |
|  | Apr. | 4. | By cash, Mar. report | 1,022 | 04 |
|  | May | 11. | By cash, Apr. report | 677 | 04 |
|  | Jun. | 12. | By cash, May report | 548 | 96 |

"That James W. Davis, as tax collector of Walker county, on the 6th day of November, 1898, made a report to the county treasurer, under oath, as required by law, showing the amount of taxes collected by him during the month of October, 1898, and that the amount shown by said report to have been collected for county taxes during said month was $954.46. The treasurer's book shows that on the day that this amount was credited to J. W. Davis, C. W. Stubblefield, tax assessor of said county, was charged with $646.38. That similar reports were made by said Davis for each month thereafter, under oath, as required by law; and that all of the amounts so reported as having been collected for county taxes were paid over to the county treasurer, except that shown by the report made for the month of June, which was $7,076.78. The amounts so reported as having been collected were paid over to the county treasurer, as shown in said account in the county treasurer's book, above set forth. That similar reports had been made by the said Davis for collections made during the preceding tax year, and that all

of the amounts reported as having been collected by him for the preceding tax year were paid over to the county treasurer during the said tax year,—that is to say, prior to the 1st day of July, 1898,—except the amounts collected as shown by said report during the month of March, 1898, and during the month of June, 1898. That the amount so collected during the month of March, 1898, as shown by such report was $1,917.48. That the amount so reported to have been collected in the month of March was not paid into the treasury of the county until the 28th day of November, 1898. That witness did not remember whether such payment was made by check or in money. That sometimes said Davis paid in money, and sometimes by check. That witness was cashier of the bank in the Jasper Trust Company, and that, if said amount of $1,917.48 was paid by check, it had all been deposited in the bank subsequent to the 1st day of October, 1898, as said Davis had no funds on deposit in said bank on the 1st day of October, 1898. That said payment of $1,917.48 was applied by witness in satisfaction of the amount due by said Davis, as such tax collector, on account of the collections made by him during the month of March, 1898. That witness made such application in order to keep his books straight with the reports. That at the time he made such application of said payment, Davis said it was all right with him. That witness told Davis he wanted his books to compare with the reports, and Davis assented, and made no objection to his applying said payment. That witness' recollection was that said payment was made in a check. That witness did not know where Davis got the money with which to make such payment, nor where the money came from. That said Davis had deposited money in the bank all during the month. That said Davis made payment of the amounts shown by his report to have been collected during the month of June, 1898, to wit, $2,980.71, by paying on November 29, 1898, $92.50, and the balance on December 14, 1898. That the collections made by said Davis, as shown by his reports, during the tax year 1897, were as follows:

| | | | | |
|---|---|---|---|---:|
| For the month of | October | | $ | 716 87 |
| " | " | November | | 1,797 72 |
| " | " | December | | 15,036 22 |
| " | " | January | | 2,065 93 |
| " | " | February | | 691 11 |
| " | " | March | | 1,917 48 |
| " | " | April | | 1,127 91 |
| " | " | May | | 1,001 12 |
| " | " | June | | 2,980 91 |

"That the books of the county treasurer showed all the payments made by said Davis, as tax collector, for the year 1897, as well as the tax year 1898, such payments being shown in the accounts of said Davis in said book, together with the date of such payments. Thereupon plaintiff offered in evidence and read to the jury the said account of said Davis as tax collector, which said account for the tax year 1897 is in words and figures as follows, to wit:

Cr.

| | | | | | |
|---|---|---|---|---|---:|
| 1897. | Dec. | 4. | By cash | $ | 716 87 |
| | Dec. | 4. | By cash | | 1,797 72 |
| 1898. | Jan. | 19. | By cash | | 15,036 22 |
| | Mar. | 1. | By cash | | 2,065 93 |
| | Mar. | 5. | By cash | | 691 11 |
| | May | 4. | By cash | | 1,127 91 |
| | June | 6. | By cash | | 1,001 12 |
| | Nov. | 29. | By cash (Mar. Col.) | | 1,917 48 |
| | Nov. | 29. | By cash (Jun. Col.) | | 1,843 31 |
| | | | By error in assessment | | 570 84 |
| | | | By collector's commission | | 553 98 |
| | | | By insolvencies | | 59 44 |
| | | | By lands bid in by state | | 84 32 |
| | | | By Southern Ry. tax litigation | | 562 42 |
| | | | | | |
| | | | Total | $ | 28,557 76" |

The following are the Alabama statutes relating to returns and settlements of tax collectors:

"4035 (555). Monthly reports and payments to be made by collector.—The tax-collector, within the first three business days of November, in each year, and within the first three business days of each month thereafter until he makes his final settlement for such year, shall make under oath to the county treasurer, or to the judge of probate, if there be no county treasurer in the county, an itemized report in writing, a copy of which shall be, by the collector, forwarded to the auditor, setting forth separately the taxes collected by him for the state and county during the preceding month and up to the date of such report, subsequent to his preceding report; and within five days after making such report he must pay to the state treasurer all state taxes then due from him to the state, by him before that time collected, and must then also pay to the county treasurer all county taxes then due from him to the county, by him before that time collected. The county treasurer shall give to the tax collector a receipt in duplicate for such monthly report, one of which duplicates shall be promptly forwarded to the auditor by the tax-collector."

"4038 (558). Final settlement to be made with the auditor on or before the first of July.—On or before the first day of July in each year, the tax-collector must make final settlement, under oath, with the auditor, of all matters pertaining to the office of tax-collector, and pay over to the treasurer the balance which may be found due from him for amount of taxes with which he is chargeable under the laws of the state; and at that time he must also account to the auditor and pay over to the treasurer all money received by him from the sale of lands and other property which may have been sold for payment of taxes, and also account to the auditor for all the lands bought in by the state. He must also report under oath to the auditor, and pay over to the treasurer, all escaped taxes assessed and collected by him."

"4039. Final settlement to be made with county treasurer on or before the first of July.—The collector must also, on or before the first day of July in each year, make final settlement, under oath, with the county treasurer for all the county taxes, which have been assessed and levied for the use of the county, and then pay over to the county treasurer the balance of the county tax due from him as such tax-collector, and not paid over prior to that date, according to the tax books in the office of the judge of probate."

Code Ala. 1896.

The jury gave the plaintiff all it claimed, except the collector's commissions and said $1,917.48.

Edw. H. Cabiness and Saml. D. Weakley, for plaintiff in error.
A. O. Lane and F. S. White, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). On general principles, a defaulting tax collector ought not to be entitled to commissions on the amounts he has collected from taxpayers and failed to pay over to the proper authorities. He has not performed the full work for which the commissions were intended to pay, and he is an unfaithful trustee. The sureties on a defaulting tax collector's bond, who refuse to pay up the defalcation, and compel litigation, ought not to be entitled to credit for the amount of commissions on any sum the tax collector has collected. The public ought not to be compelled to pay the commissions for collecting the taxes, and at the same time be at the expense of litigating with the sureties on the defaulting tax collector's bond to recover the same money. This is in accord with adjudged cases, so far as they have been brought to our attention. See Vermilion Parish v. Brookshier, 31 La. Ann. 736;

State v. Alsup, 91 Mo. 172, 4 S. W. 31. We understand that under the Alabama statutes the commissions allowed the tax collector were intended as compensation for the entire work of his office, which included not only the receipt of the taxes from the taxpayers, but also the accounting to the proper auditor, and the payment into the treasury. Section 4097, Code Ala. 1896, provides that the collector may retain his commissions when he makes payment into the state treasury. Of course, under this statute, if no payments were made into the treasury, no commissions could be retained. Section 4037 of the same Code provides that the tax collector must also, on or before the 10th day of January and the 10th day of April in each year, account to the auditor, under oath, for the amount of taxes, etc., and upon such accounting shall be allowed by the auditor the amount then due him for commissions, fees, expenses, etc., in the discharge of his duties, as provided by law; and we construe this statute practically to mean that the tax collector shall be entitled to commissions only when he has performed not only the duty of collecting the dues from the taxpayers, but has accounted for and paid over the same.

As to the claimed credit of $1,917.48, the undisputed facts appear to be that on April 4, 1898, the tax collector, Davis, returned that amount as collections for the month of March, 1898; that he did not pay said sum into the treasury within five days after making said return, nor at any time prior to April 18, 1898, the date of approval of the bond in suit; nor was the same paid until November 29, 1898, when the tax collector paid over to the county treasurer the sum of $1,917.48, which was applied by the treasurer, with the consent of the tax collector, to the payment of the aforesaid March collection. As to where the tax collector obtained the money to make this payment, there is no satisfactory evidence. Under these facts the case is presented in two aspects: First. That by the failure to pay over within five days the tax collector not only was delinquent in his duty, but was a defaulter, with no continuing duty as tax collector to pay over the said sum of $1,917.48. The other is that, after collecting the said sum of $1,917.48, and returning the same on April 4th, although he failed to pay over the amount within five days, it was a continuing obligation and duty resting on him as tax collector to pay the same over; an obligation and duty for the performance of which the sureties on the bond approved April 18th bound themselves. As the case is presented on this record, we are of opinion that under neither aspect are the sureties on the tax collector's bond entitled to the credit claimed. If the tax collector took the moneys collected after the 18th of April, 1898, and paid the sums which he had collected prior to that time, but had failed to pay over, that itself was such a misapplication of the moneys collected by him as rendered the sureties liable. State v. Sooy, 39 N. J. Law, 539; People v. Hammond (Cal.) 42 Pac. 36; State v. Hayes, 7 La. Ann. 121; State v. Powell, 40 La. Ann. 234, 4 South. 46; Inhabitants of Colerain v. Bell, 9 Metc. (Mass.) 499; Hecox v. Insurance Co. (C. C.) 2 Fed. 535; Board v. Willard (Minn.) 39 N. W. 71, 1 L. R. A. 118. All these cases fully sustain the above proposition, but the case of State v. Sooy, supra, is so instructive and well considered that we quote from it at length:

"The contention of the defendants is that they cannot be prejudiced by the appropriation of these moneys by Sooy to the payment of taxes received by him before their bond was given, and that, the moneys having in fact gone into the public treasury, they must be applied to the account on which they were received. At the time of the application of moneys received after the 8th of April, 1875, Sooy was indebted to the state in the amounts so applied for taxes and dividends received in December, 1874, and after that date. He became a debtor to the state for taxes and dividends received after the defendants' contract of suretyship. The appropriation of payments under such circumstances is regulated by a rule of law, which, as a general rule, must be regarded as completely settled. In the first instance, the right to direct to what particular debt the payment shall be applied is with the debtor. If he gives no directions, the creditor may make the appropriation himself; and, in the absence of all indications of the will or intention of the parties, the law will apply the payment according to its own notice of the intrinsic justice of the case. White v. Trumbull, 15 N. J. Law, 314; Oliver v. Phelps, 20 N. J. Law, 180; Terhune v. Colton, 12 N. J. Eq. 312; McGruder v. Bank, 1 Am. Lead. Cas. 339. As a general rule, this right of appropriation by the parties is unlimited and unqualified. It is not taken away or impaired by the effect of the appropriation on the rights of third persons. Edwards v. Derrickson, 28 N. J. Law, 39–67. It is only when the court is called upon to make the appropriation, in the absence of an appropriation by the parties, that the equities of third persons will be allowed any influence. Highly favored as sureties are in the law, their equities are subordinated to the legal rights of the debtor to direct how his payments shall be applied. As was said by Best, C. J., in Williams v. Rawlinson, 10 Moore, 371: 'If the principal consented to such an appropriation, there is an end of the question, for he had clearly an option as to which account the payment should be applied to, and he alone had an unfettered right in this respect, and over which the defendant, as surety, could have no control, unless there were an express or distinct agreement entered into at the time of the execution of the bond.' It is insisted that sureties on an official bond are excepted out of the operation of this rule of law; that in such cases neither the principal nor the government enjoys this right of application of payments, and that the duty of making such application devolves upon the court; and that in the performance of that duty receipts will be credited on the accounts on which they were received by the officer. If such an exception exists, the reasons on which it is founded are not apparent, especially if it be so far-reaching in its operation as to impose a loss on the government, arising from the misappropriation of public moneys by the officer for whose fidelity the sureties have undertaken. It further imposes a duty on the government of inquiring, at its peril, from what source moneys remitted by its officers were derived,—a duty which does not devolve upon a private individual holding the obligation of a surety."

And, after an exhaustive review of the authorities, the court held:

"We think that the defendants, as sureties, are liable for all the moneys received after their bond was given, and that they cannot relieve themselves from this liability by showing that their principal used such moneys, or a portion thereof, to satisfy past delinquencies to the state. To permit the acts of the treasurer in that respect to have the effect of an exoneration of his sureties from responsibility would, under the circumstances of this case, be to allow them to make a shield and defense of the fraudulent conduct of an officer whose honest and faithful discharge of the duties of his office they had guarantied."

Considering the other suggested aspect of the case, it seems that if, on April 18, 1898, it was an active duty of the tax collector, as such, to pay into the county treasury the amount returned by him as previously collected for the month of March, then it was one of the duties or obligations of the tax collector for which the surety bound itself; and whether the sum paid in on the 29th of November, 1898, was applied to the payment of the March collection or of collections

subsequent to April 18th, is wholly immaterial.   Conover v. Inhabitants of Middletown Tp., 42 N. J. Law, 382;  Bales v. State, 15 Ind. 321;  Corprew v. Boyle, 24 Grat. 284;  City of Hartford v. Franey, 47 Conn. 76;  Fox Tp. v. McCord (Iowa) 6 N. W. 536;  Bockenstedt v. Perkins, 73 Iowa, 23, 34 N. W. 488;  Bernhard v. City of Wyandotte, 33 Kan. 465, 6 Pac. 617.   The statutes of Alabama given above indicate that it was the duty of the tax collector to have paid over the amount of the March collection within five days after the return of the same;  but they also indicate very clearly that, if he failed to pay it over at that time, it was his duty thereafter to pay it over, particularly on his final return in the month of July.   In other words, while he became in a certain sense delinquent for the failure to pay the money over within five days, he did not become an absolute defaulter for the same by the failure so to do, and there was a continuing incumbent duty on him as tax collector to pay it over.   This view of the statutes of Alabama is in accord with the opinion of the supreme court of the state as clearly laid down in Fidelity & Deposit Co. v. Mobile County, 124 Ala. 144, 150, 27 South. 386:

"As against the county or state there is no presumption that a tax collector has misappropriated, converted to his own use, or embezzled taxes collected by him from the mere fact that he has failed to pay over such taxes at the time he was required by law to pay them over.   To the contrary, if he carries such sums past one day of settlement (if he fails to pay them over on January 1st, for instance), the presumption is that he still has the money, and will pay it over on the next day of settlement (the 1st day of July, for instance);  and if he has such money in hand at any such subsequent time when an additional bond is required of him, given, and approved, his failure thereafter to account for and pay over the same as required by law is a default occurring subsequent to the execution of such bond, for which the sureties thereon are liable."

It is argued that this is obiter, and it may be, but it is notwithstanding sound reason, and, we think, sound law.

The instructions given by the trial court to the jury, duly excepted to at the time, warranted the jury in allowing the surety a credit for the tax collector's commissions and for the said item of $1,917.48, and to that extent were erroneous, and constitute reversible error.   The judgment of the circuit court is reversed, and the cause is remanded, with instructions to award a new trial, and thereafter proceed according to law and the views herein expressed.