## GOTTSEGAN CICAR CO. v. LEVY et al.

No. 2328.   Decided February 8, 1913 (130 Pac. 780).

1. ESTOPPEL—RECITALS IN BOND—CONCLUSIVENESS. A guarantor is estopped to dispute the recitals of his own contract, so far as they are material and not violative of law or public policy; and hence a trust company which guarantees payment for goods furnished under a contract of sale is estopped to deny that such a contract was entered into. (Page 371.)

2. GUARANTY—RELEASE OF GUARANTOR—ACCEPTANCE OF NOTES. A guarantor of payment for goods sold on four months' credit is not released by the seller's accepting notes for the price maturing within that time. (Page 374.)

APPEAL from District Court, Third Judicial District; *Hon. George G. Armstrong*, Judge.

Action by Gottsegan Cigar Company against J. R. Levy, and H. S. Levy, doing business as J. R. Levy & Brother, and Utah Savings & Trust Company.

Judgment for plaintiff against defendants J. R. Levy and H. S. Levy. Judgment for defendant Utah Savings & Trust Co.

AFFIRMED AS TO DEFENDANTS J. R. LEVY AND H. S. LEVY; REVERSED AND REMANDED AS TO DEFENDANT UTAH SAVINGS & TRUST CO.

*Stephens, Smith & Porter* for appellant.

*Richards, Richards & Ferry* for respondents.

FRICK, J.

This action was brought to recover the value of merchandise, which, in the complaint, it is alleged was sold and delivered to J. R. Levy & Bro. at Salt Lake City, Utah, the appellant residing in New York City, the payment of which, it is averred, was guaranteed by the respondent Utah Savings & Trust Company, hereafter called Trust Company.

There is no dispute with regard to the facts, which, so far as material, are substantially as follows:

It seems that the appellant prior to December, 1907, had sold certain goods to the firm of J. R. Levy & Bro., a partnership doing business under that name in Salt Lake City, Utah, and that at about that time the appellant refused to extend further credit to said firm. Pursuant to such refusal, J. R. Levy & Bro. on the 20th day of December, 1907, wrote a letter to appellant, in which considerable surprise is expressed at appellant's refusal to extend further credit to said firm. After stating that the firm had entered into business arrangements whereby it became necessary for it to obtain certain goods from appellant, an offer was made by the firm whereby the payment for further purchases of goods for the coming year should be guaranteed by the mother of the Levys, who, at the time, was in New York City. In the letter the mother's telephone number in New York was given appellant, and it was requested to take the matter of extending further credit up with her. The mother some days thereafter called on appellant at its place of business in New York City, and an arrangement was entered into whereby appellant agreed to sell upon credit certain merchandise to the Levys during the year 1908 upon the condition

that the credit should not exceed $2500 at any one time, and that payment for goods should be made in four months from the time any particular consignment of goods arrived at Salt Lake City. In making the arrangement with the mother, it was agreed that appellant would advance the amount of twenty-five dollars to pay the premium for a surety or guaranty bond to be obtained from some reputable surety or guaranty company whereby the payment of the goods to be purchased as aforesaid should be guaranteed. It seems that the arrangement between the appellant and the mother was by her communicated to her sons at Salt Lake City, and that on the 16th day of January following they informed appellant that a surety bond in the sum of $2500 had been obtained from a surety company, whereby said company had guaranteed the payment of that amount if credit were extended by appellant to said firm for the period of one year upon the conditions named in the bond, and that said bond would be forwarded by the Surety Company to appellant. In that letter the firm also reminded appellant of its promise to the mother to pay the premium for the bond, which was twenty-five dollars, and asked that the same be remitted at once, which was accordingly done. In the same letter the firm also ordered some merchandise, which was purchased and sold pursuant to the agreement aforesaid. The bond aforesaid was prepared by the Surety Company at the request of J. R. Levy & Bro. and the terms and conditions therein contained were inserted as requested by them without the knowledge of appellant. The bond was duly executed by both J. R. Levy & Bro. and the Surety Company, and the material parts thereof are as follows: That the firm of J. R. Levy & Bro., composed of J. R. Levy and H. S. Levy as principals, and the Trust Company as surety, are firmly bound in the sum of $2500, payment of which is to be made to the appellant upon the following conditions, namely: "Whereas, the said J. R. Levy & Brother have entered into a contract with the Gottsegan Cigar Company for the term of one year from and after January 1, 1908, wherein and whereby the said J. R. Levy & Brother have agreed to pur-

chase from the said Gottsegan Cigar Company certain assignments of cigars and pay for the same within four months after the said consignments have arrived in Salt Lake City, and whereas, the said Gottsegan Cigar Company have agreed to sell the said consignment of cigars as the same may be ordered by the said J. R. Levy & Brother, providing the said J. R. Levy & Brother will give a bond in the sum hereinbefore named. Said bond to guarantee the payment for said consignments of cigars within four months from the date of their arrival in Salt Lake City as aforesaid: Now, therefore, the condition of this obligation is such that if the above bounden, J. R. Levy & Brother, shall keep all and singular the covenants and agreements of said contract, and shall pay for the said consignments of cigars within four months from the date of their arrival in Salt Lake City, Utah, according to the true intent and meaning of said contract, then this obligation shall be void, otherwise to remain in full force and virtue." At the time the bond was forwarded to appellant, J. R. Levy & Bro. informed it by letter that the contract referred to in the bond would forthwith be reduced to writing, and forwarded to it also. The contract, however, did not arrive, so the attorneys for the appellant on the 24th day of February, 1908, prepared a contract which they thought conformed to the conditions named in the bond. The proposed contract was forwarded to Salt Lake City for execution by the firm. The firm, however, failed, to execute the same, but a similar contract was executed by J. R. Levy and H. S. Levy personally, but not by the firm, which was dated on the same day and was forwarded to appellant at New York City. Considerable time having elapsed before said contract reached appellant, its attorneys suggested that a new bond be executed in which the contract, as reduced to writing, should be recited or referred to in terms so as to avoid any controversy that might arise with respect to the identity of the contract which was mentioned in the bond. The Trust Company agreed to issue such a bond on payment of a second

42 Utah 24

premium, and upon being again indemnified by the mother
of J. R. Levy and H. S. Levy. The mother, however, in-
sisted that she had already indemnified the Trust Company,
and refused to further indemnify it. The manager of the
Trust Company therefore returned the additional premium
which appellant had forwarded for a new bond, and in clos-
ing the letter he referred to the bond matter as follows: "We
understand from your Mr. Simons that the whole matter
will rest as it is." In reliance on the bond, appellant dur-
ing the year 1908 sold and shipped to the firm of J. R.
Levy & Bro. a considerable amount of merchandise, of which
there remained unpaid when this action was commenced the
sum of $1209.25. Among the consignments shipped there
were four of $225 each, and one of $229, for which notes
were given by the firm of J. R. Levy & Bro., signed thus:
"Sam Levy Sons by Joe Levy." All of the foregoing con-
signments were shipped within the year mentioned in the
bond, and the notes given as aforesaid were made payable
in four months from the dates thereof; that is, the debt or
account was evidenced by the notes aforesaid. Why they
were signed "Sam Levy Sons" is not made to appear, except
that J. R. Levy & Bro. were the successors of Sam Levy
Sons. We only mention this manner of the signature be-
cause it appears in the record, not because it is controlling
or even material in arriving at the result. Appellant, it ap-
pears, made efforts to collect the notes aforesaid, but with-
out success. The action is, however, not based upon the
notes which were in appellant's possession at the time of
trial, and were introduced in evidence by it and are made a
part of the record, but the action is based upon the original
claim or demand.

    The court made findings in which the foregoing facts are
stated with much detail and at great length. Notwith-
standing the fact that the evidence is without dispute and
the conditions of the bond sued on are fully set forth in the
findings of the court in which it is recited that a contract
was duly entered into between appellant and the firm of
J. R. Levy & Bro. respecting the sale of the merchandise in

question and the credit that was to be given, the court, nevertheless, found that "there was no agreement, either oral or written, existing between the plaintiff (appellant) and the defendants J. R. Levy and H. S. Levy or J. R. Levy & Bro. for the sale of merchandise of any kind to said defendants, on credit or otherwise." It was also found that J. R. Levy & Bro. never acted under the bond sued on; that the several amounts we have herein set forth "were settled for with notes as aforesaid signed by the Sam Levy Sons Cigar Company, which the plaintiff (appellant) accepted in settlement for said goods and still holds." The court found as conclusions of law that appellant was entitled to judgment against J. R. Levy and H. S. Levy for the amount sued for, which, with interest, at the time of trial, amounted to $1334.35, and that appellant was not entitled to judgment against the Trust Company. Judgment was entered accordingly, from which this appeal is prosecuted.

The findings of fact and conclusions of law are strenuously assailed by the appellant. We cannot see how the findings of fact or conclusions of law can be sustained under the undisputed evidence. In the very teeth of the recitals in the bond the court found that no contract was ever entered into between appellant and the firm of J. R. Levy & Bro. The Trust Company is therefore relieved from the effect or consequences of its own recitals without assigning sufficient or any cause therefor. If the Trust Company had any cause to urge why the recitals in the bond should not be considered, or that it should be relieved from the effects or consequences thereof, such cause should have been fully pleaded. The appellant would thus have had an opportunity to either admit or deny the claim, and the court could then have disposed of such issue before it proceeded to set aside and disregard the recitals in the bond. The Trust Company, under the undisputed facts of this case, is estopped from questioning its own recitals which it inserted in the bond. No attempt was made to plead or prove fraud, and yet the Trust Company was permitted to escape the consequences of its own recitals, and this, too, where such re-

citals were made at a time and place when and where appellant had no opportunity whatever either to suggest or prevent any statements or recitals that were contained in the bond. That the surety or guarantor may not dispute his own recitals which are material and relate to the subject-matter of the transaction, where such transaction is not unlawful or is not prohibited by public policy or some statute, is, we think, well settled. In 1 Brandt on Suretyship and Guaranty, sec. 52, the author says:

"The general rule is that sureties are estopped to deny the facts recited in the obligations signed by them, and this whether the recitals are true or false in fact. Having once solemnly alleged the existence of the facts, they cannot afterwards be heard to deny it."

In that and the succeeding sections the author gives many concrete instances where the courts have held sureties and guarantors estopped from denying the recitals contained in their bonds. The author of Child's Suretyship and Guaranty, after stating that a surety or guarantor may assail his contract for fraud practiced upon him, at page 262, says:

"A surety, as a rule, cannot vary or contradict, by oral evidence, the recitals in a bond which he has signed, although they are false."

To the same effect is Stearns on the Law of Suretyship, sec. 19. (See, also, 20 Cyc. pp. 1421, 1423.)

In *Brown & Haywood Co. v. Ligon* (C. C.), 92 Fed. 855, in passing upon the question now under consideration, it is said:

"This bond recites the making of the contract between Long and Pierce County, the due execution of the Addison bond by Addison and the other sureties, and their obligations to Pierce County thereunder; and the defendants ought to be estopped from asserting the contrary."

In *Remsen v. Graves,* 41 N. Y. at page 475, the New York Court of Appeals, speaking through Mr. Justice Mason, expresses the same thought as follows:

"The defendant (the guarantor) cannot be permitted to show that his bond is invalid on the ground that it was issued by the corporation for a purpose not authorized by its charter. The guaranty of payment of the bond by the defendant imports an agreement or undertaking that the makers of the bond were competent to contract in the manner they have, and that the instrument is a binding obligation upon the makers."

So here the Trust Company most solemnly asserted in its bond that a certain contract existed in which merchandise was to be sold by appellant to the firm of J. R. Levy & Bro., and further asserted that it would guarantee the payment of the merchandise that was to be sold if sold as conditioned in the contract, which conditions were also set forth in the bond itself, in case the firm did not pay therefor within the time set forth in the bond. Appellant in New York had agreed upon terms and conditions with the mother of J. R. Levy and H. S. Levy, and they had accepted the terms and ordered a bond drawn and executed by the Trust Company in conformity with that agreement, which was done. Appellant sold the merchandise relying on the bond. True, it attempted to have a new bond issued after it discovered that the original contract had not been reduced to writing in order to prevent the very controversy which arose at the trial. Appellant, however, failed to obtain a new bond for the sole reason that the Levys were either unable or unwilling to again indemnify the Trust Company for such new bond. The general manager of the Trust Company, with full knowledge of all the facts, then assured appellant that matters could rest as they were. In addition to the foregoing authorities, we refer to the following, all of which in some way illustrate concrete instances where the courts have held that sureties or guarantors were estopped from questioning the material and lawful recitals in their bonds: *McLaughlin v. McGovern*, 34 Barb. (N. Y.) 208; *Duffee v. Mansfield*, 141 Pa. 507, 21 Atl. 675; *Hauser & Son v. Ryan*, 73 N. J. Law, 274, 63 Atl. 4; *City of Madison v. American Sanitary, etc., Co.*, 118 Wis. 480, 95 N. W. 1108; *Red Wing S. P. Co. v. Donnelly*, 102 Minn. 192, 113 N. W. 1, 120 Am.

St. Rep. 619; *Fidelity & Deposit Co. v. Mobile County,* 124 Ala. 144, 27 South. 386. We are of the opinion, therefore, that the court committed grievous error when it found contrary to the recitals in the bond that no contract had been entered into for the sale of the merchandise in question.

The conclusion of law that the Trust Company is not liable upon its bond is no doubt, in part at least, based upon the finding that notes were given in "settlement" as it is found for the merchandise. It will be observed that the period of credit provided for in the bond was that payment should be made in four months from the date of the arrival of the goods in Salt Lake City. None of the notes was given for a longer time than four months. The time of credit, therefore, was not extended beyond the time provided for in the bond. In view of this fact, we are unable to conceive how the taking of the notes could have affected appellant's right to rely upon and enforce the bond. There was no proof that the notes were either given or received as payment for the merchandise. The only possible effect these notes could have had was to evidence the actual amount due; that is, the notes, in legal effect, amounted to no more than to make that transaction the same as an account stated between the parties. The general rule with regard to whether the taking of promissory notes constitutes payment of the original demand or claim is well stated in 30 Cyc. 1194, thus:

"In the absence of an agreement between the parties that it is to be received as payment, the common law rule which prevails in England and has been adopted without question in nearly all of the states in this country is that a draft or bill of exchange, acceptance, order, or promissory note of the debtor is not a payment or an extinguishment of the original demand. And the same rule applies to the bill, note, order, or acceptance of a third person given by the debtor to the creditor."

This seems to be the accepted doctrine in all of the states except Indiana, Maine, Massachusetts, and Vermont, where the common law rule, for some reason not material here, does not prevail. In 32 Cyc. 169, the rule with respect to the

effect the taking of a promissory note has upon surety contracts is stated thus:

"In the absence of agreement, a note given for a debt by the principal, or by a surety, does not as a general rule constitute payment of such debt."

There is no evidence whatever that the notes in this case were given or received in payment of the original demand or account, but there is abundant evidence to the contrary. In the following cases it is held that notes taken under circumstances like those in the case at bar do not affect the liability of the surety or guarantor, and that the taking of notes under such circumstances does not affect their liability, unless the time of payment or credit is extended. (*Penny v. Crane Bros., Mfg. Co.*, 80 Ill. 244; *Best Brewing Co. v. Vinterum*, 67 Ill. App. 555; *Fifth Nat. Bank v. Woolsey*, 31 App. Div. 61, 52 N. Y. Supp. 827; *Page Belting Co. v. Parker*, 21 App. Div. 160, 47 N. Y. Supp. 400; *Lennox v. Murphy*, 171 Mass. 370, 50 N. E. 646.) In the last case cited the legal effect of taking notes under circumstances somewhat similar to those in the case at bar is stated to be:

"The notes were given for leather, and we do not perceive what difference the change in the form of the indebtedness made with regard to the plaintiff's contract although as a matter of bookkeeping the notes may have been charged on a separate page."

In the case of *Page Belting Co. v. Parker, supra,* notes were given, as in this case, by the same firm signed by a different name, yet it was held, as it always should be, that the giving of notes under such circumstances could not affect the liability of the surety or guarantor. We think that, under the undisputed facts, the court's findings cannot be permitted to stand, nor can its conclusions of law that the Trust Company is not liable upon the bond in question prevail. We are, however, again reminded that sureties are the favorites of the law. But, after granting that as an abstract proposition, what is there in this case upon which the doc-

trine can be given any effect? Sureties no doubt have the right, not only of imposing the precise conditions upon which they will be bound, but they also have the right to insist that those conditions be not departed from in a material matter. In what way have the conditions contained in the bond in question been violated or departed from by appellant? Where a surety, as here, guarantees the payment of a debt, certainly the creditor is not prohibited from attempting to collect the same from his principal debtor, and to that end the creditor may act in accordance with known and established business methods unless forbidden to do so in the bond. In this case the district court, so far as we can discover, absolved the Trust Company from its obligation to pay upon the sole ground that appellant demanded and received the notes evidencing the debt which it attempted to collect in the regular and usual way, but which notes did not extend the credit or time of payment beyond the time limited in the bond. If this is sufficient to avoid a surety contract, we fear it must be placed upon the ground that sureties are more than the mere favorites of the law.

The findings of fact and conclusions of law in favor of the Trust Company, so far as they are in conflict with the views stated herein, are hereby vacated and set aside, and the judgment in favor of said Trust Company is reversed and the cause is remanded to the district court of Salt Lake County, with directions to grant a new trial as against said company, and to proceed with the case in accordance with the views expressed in the foregoing opinion.

The judgment against J. R. and H. S. Levy is affirmed, appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.