# State, Use of Winston County *v.* Tingle.

### Taxes.

(Decided May 11, 1916.  71 South. 991.)

**Taxation; Collection; Liability on Bond.**—Where a tax collector authorized the county treasurer to apply taxes collected for a certain year on those due for the preceding year, or knowingly permitted such application without objeciton, he was guilty of a conversion of the taxes collected, rendering him and his bondsmen liable.

APPEAL from Winston Circuit Court.

Heard before Hon. JOHN H. MILLER.

[State, Use of Winston County v. Tingle.]

Action by the State for the use of Winston County, against J. M. Tingle and others, to recover for taxes collected. From a judgment for plaintiff for an amount less than that claimed, plaintiff appeals. Reversed and remanded.

BANKHEAD & BANKHEAD, for appellant. No counsel marked for appellee.

SAYRE, J.—Appellee Tingle, to whom we will refer as the defendant, succeeded himself in office as tax collector of Winston county on July 1, 1913, giving a new bond for the faithful discharge of the duties of his office during the term upon which he then entered. On February 23, 1914, being largely in arrears in his accounts with the state and county, he abandoned his office. The state, suing for the use of Winston county, brought this action against the defendant and his sureties for the term above stated, and on March 23, 1915, recovered judgment for the sum of $1,279.60. Evidence for the plaintiff limited the claim to a shortage on account of taxes that were collected, or should have been collected, for the county during the year 1913, by which we mean to say that the plaintiff made no effort to charge defendants with a shortage for any previous year. Aside from the controversy about the item to be presently mentioned, it appeared without serious dispute that at the time of the trial defendant was in default on account of taxes collected for the year 1913 in a sum approximating $5,000, and by this appeal plaintiff complains that the verdict and judgment should have been for this amount. The contention here arises out of an item of $3,-658.06 paid by the defendant to the county treasurer on November 10, 1913. This sum was derived from tax collections for the current year. Defendant took a receipt for this payment in words and figures as follows:

"No. 104. November 10th, 1913. Received of J. M. Tingle $3,658.06 account of balance due on county taxes for the year 1912 as per examiner's report."

With reference to this payment Sutherland, the county treasurer, testified as follows:

"On the 10th day of November, 1913, J. M. Tingle turned over to me as county treasurer the sum of $3,658.06. It was turned over to me as tax money. Mr. Tingle was not given credit for that sum of $3,658.06 for 1913 taxes. I suppose it was the coun-

ty's tax money. He turned it over to me as tax collector, and I received it as county treasurer. * * * I don't know that that money was collected for 1913. It was after the tax year commenced. When Mr. Tingle paid the said sum of $3,658.06 on the 10th day of November, 1913, he said he wanted to settle the balance due by him on 1912 taxes. For that reason he was not given credit for that payment on the 1913 taxes, because he made the request that it be credited on 1912 taxes, and it so appears on the receipt that I gave him for the money, and on the stub of the receipt. That closed up the taxes due for 1912, and I applied it just as he said."

The defendant, testifying as a witness, said: "In November, 1913, when I paid Sutherland $3,658.06, I never told him to put that on a former year. He suggested that when I paid him the money. As far as my knowledge is concerned, I didn't know I owed them anything. I told him I was going to pay him over some money for 1913. He said there is something they have you charged with for 1912 taxes, and we had better get that straight and commence on 1913. He went on then and placed it back there. I never told him to do it. He did it. That was after the collection for taxes for 1913 began. It was in November, and that money I had collected was for taxes for that year. I told Mr. Sutherland, the treasurer, that I was going to pay over some taxes that I had collected."

And on cross-examination the defendant testified: "The report showed that it was for taxes for 1913. I told him that. When Mr. Sutherland told me I owed some taxes for 1912 that hadn't been paid in, I didn't say anything to him. When he said that he was going to apply it to that year, I didn't say anything at all. I didn't tell him not to do it. That was taxes I had collected for the period this bond sued on here was executed. All the money I paid over while I was tax collector I paid over to Mr. Sutherland and took receipts."

The court left it with the jury to say whether on this evidence the defendant and the sureties, sued with him, were entitled to a credit for the amount of the payment in question, and it is entirely clear that the jury allowed the credit.

In our view of the case, the points of difference between the testimony of these witnesses should not have been submitted to the jury as of possible controlling importance in determining the amount of plaintiff's recovery; for, notwithstanding those

differences, the fact remained without dispute that the payment was applied in acquittance of taxes collected for 1912, and this was an unlawful conversion of the money so applied, accomplished, if not by defendant's direction, at least with his full acquiescence and consent. In either case the sureties were liable.

The law directed the proper application of the payment, but the county, as a composite governmental agency, could not know and was under no duty to inquire, at its peril, from what source the money came. It was the duty of the defendant to see that a proper application was made. If the county treasurer was a party to the misappropriation, that did not lessen defendant's wrong in permitting it to be made nor excuse him and his sureties. The sureties were liable for all moneys received by their principal after their bond was given. They could not relieve themselves by showing that their principal used such moneys or any part thereof to satisfy past delinquencies. Highly favored as sureties generally are, their rights in the present case were limited by the positive law the observance of which by their principal their bond was intended to secure. To allow the credit did not correct the wrong that had been done nor fill the undisputed void in the county treasury, while, as for sureties, the course adopted merely shifted the burden of making good defendant's deficit from one set of sureties to another. The defendant should not have been heard to claim a credit for the sum in question on his collections for 1913 after he had received a credit for the same sum on his collections for 1912. He consented at least to the unlawful misapplication of the payment when it was within his power and duty, as prescribed by law, to see that a proper application was made, and that should have been the end of his claim for a further credit of the same sum; should have been the end of the contention on the part of the sureties that the payment be credited to the fund on account of which it had been received by the defendant. If the defendant had simply delivered the sum in question to the treasurer, and without fault on his part it had been improperly credited on his collections for 1912, no doubt, the sureties would have been entitled to have its use adjudged in acquittance of the collections for 1913. Most likely the court below took the view of the law herein expressed, and our difference arises out of our different conclusion as to the effect of the evidence; but to us it seems that the undisputed testimony establishes the fact that defendant was

[Kyle v. Jordan.]

at least a willing party to the misapplication of the payment, though he may not have suggested it in the first place, and afterwards allowed the credit to remain as it had been placed for such benefit as might thereby accrue to him. This was a conversion of the money. He had therefore no right to the credit claimed in this action, and to permit the sureties to have the payment credited against their liability would allow them to make a shield and a defense of the wrong of the officer whose faithful discharge of the duties of his office they had guaranteed. —*State v. Sooy*, 39 N. J. Law, 539; *Walker County v. Fidelity & Deposit Co.*, 107 Fed. 851, 47 C. C. A. 15.

We have had no brief for appellees. We have inferred the nature of the defense from the authorities cited by appellant. Our best judgment is that the court erred in its action on the charges and in overruling the motion for a new trial.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.