BROWN & HAYWOOD CO. et al. v. LIGON et al.

(Circuit Court, E. D. Missouri, E. D.　March 17, 1899.)

No. 3,981.

1. ESTOPPEL—RECITALS IN BOND.

Where an underwriting bond recited the due execution of a bond by the obligees as sureties for a third person, and was conditioned for their indemnification from loss by reason of the obligation so incurred, the obligors are estopped by its recitals to set up the invalidity of the original bond by reason of formal defects after there has been a recovery thereon against the sureties.

2. BONDS—CONSTRUCTION—RECITALS.

There is no variance in a recital in an underwriting bond that the original bond was given to a county, because it runs to the state as obligee, where it is in fact, and by its terms, for the benefit of the county.

3. PRINCIPAL AND SURETY—RIGHT OF ACTION ON INDEMNIFYING BOND.

A bond recited that one L. had entered into a contract with a county to construct certain buildings, by which he was required to pay for all materials furnished and used in their construction, and that the obligees had become his sureties for the performance of such contract. The bond was conditioned that L. should well and truly perform and fulfill "said contract," and should save the obligees harmless from their obligation as such sureties. *Held*, that such bond was more than a bond of indemnity to the obligees, being, in addition, one for the due performance by L. of his contract, including the payment for materials, and that it was not essential, to give a right of action thereon, that a judgment for materials, obtained against the obligees as sureties for the contractor, had been paid, but that there was a breach of the bond when the obligees were subjected to such judgment, as well as by the failure of L. to pay for such materials, either of which gave the obligees a right of action thereon.

4. SAME—RELEASE OF SURETIES BY ALTERATION OF CONTRACT.

Such bond created a direct obligation in favor of subcontractors who furnished materials, which entitled them to maintain an action thereon in case of default of the contractor in making payment for such materials; and no subsequent alteration of the contract by agreement between the county and the contractor, though with the consent of his sureties, the obligees in the bond, could affect the rights of such subcontractor thereunder.

5. SUBROGATION—RIGHT OF CREDITOR TO ENFORCE SECURITY HELD BY SURETIES.

Where the sureties on the bond of a contractor for a public building, which is conditioned for the payment by the contractor for all materials purchased, have become insolvent, so that a judgment recovered on the bond by a subcontractor for materials furnished cannot be collected. the judgment plaintiff is entitled to be subrogated to any security held by the sureties, and may maintain a suit in equity to enforce for his benefit an underwriting bond taken by the sureties to indemnify them from loss or liability.

6. JUDGMENT AS EVIDENCE—PRIMA FACIE PROOF OF DEFENDANT'S LIABILITY.

A judgment against the sureties on a contractor's bond, rendered in a contested case and without collusion, is prima facie evidence of the validity of the bond, and of the liability of the defendants to the plaintiffs thereon, in a subsequent suit on an underwriting bond taken by such sureties.

This was a suit in equity by a judgment creditor of a building contractor and the sureties on his bond (such sureties joining as complainants) to enforce an underwriting bond taken by the sureties.

Farish & Williams, for complainants.

Noble & Shields, for defendants.

ADAMS, District Judge. The laws of the state of Washington provide as follows:

"Whenever a board of county commissioners of any county of this state * * * shall contract with any person or persons to do any work of any character which, if performed for an individual, a right of lien would exist under the law, * * * such board of county commissioners * * * shall take from the person with whom such contract is made a good and sufficient bond, with two or more sureties, * * * which bond shall be conditioned that such person shall pay all laborers, mechanics and material men, and persons who shall supply such contractor with provisions or goods of any kind, all debts due to such person, or to any person to whom any part of such work is given, incurred in carrying on said work." Hill's Ann. Code, § 2415.

Pierce county (one of the counties of the state of Washington) desired a court house and jail; and its commissioners on the 19th

day of September, 1890, entered into a contract of that date, with one
John T. Long, for their construction. It became necessary, under
the laws of Washington, that Long should give a bond, with resident
sureties, for the faithful performance of the contract, and he procured
a bond, with all of the complainants herein, except the Brown & Hay-
wood Company, as sureties; agreeing with such sureties, at the time
the bond was signed by them, that he would furnish them a bond ex-
ecuted by the defendants in this case, for their protection. This bond,
signed by Addison and all the other complainants in this case, ex-
cepting the Brown & Haywood Company, will hereafter be referred
to as the "Addison bond." Its condition is as follows:

"Whereas, the above-bounden J. T. Long has this day entered into a contract
with Pierce county, a corporation of the state of Washington, wherein the
said bounden J. T. Long, for a consideration therein named to be paid, [has
agreed] to make certain improvements, by erecting, building, and furnishing
materials for a court house and jail, to be built in the city of Tacoma, county
of Pierce, in accordance with said contract and the plans and specifications
therefor, and in said contract agrees to pay all persons performing labor upon
said building and doing said work, and to pay for all materials furnished and
used therein, and all persons who shall furnish such contractor with goods
or provisions of any kind, and all claims for damages: Now, therefore, if the
said bounden John T. Long, his heirs, administrators, and assigns, shall well
and truly perform the covenants and agreements entered into in said contract,
and pay all persons furnishing material therefor, all laborers, mechanics, and
material men, and all persons who shall supply said contractor with pro-
visions or goods of any kind, * * * and shall save the said Pierce county
from, in, and against all liens or claims of persons performing the work or
furnishing materials upon it, or about the work mentioned in said contract,
and shall save said Pierce county harmless from and against all loss, damage,
and expense occasioned to said Pierce county or to any person by reason of
any negligence or carelessness in the performance of said contract, or by any
breach or omission on the part of said contractor, then this obligation to be
void, otherwise to be and remain in full force and effect; and any judgment
obtained thereon shall be satisfied out of either community or separate prop-
erty."

This bond purports, by its recitals, to be the bond of J. T. Long, as
principal, with Addison and others as sureties, but, for some unex-
plained reason, was not actually signed by Long, but was signed
by all the sureties. It appears to be dated September 15, 1890, four
days before the date of the contract of September 19, 1890, but was
accepted and approved by the commissioners of Pierce county on the
19th day of September, the date of the contract. This bond makes the
state of Washington the obligee, but recites, substantially, that it was
for the benefit of Pierce county; and its condition is, substantially,
to save Pierce county harmless from liens, claims, loss, damage, or
expense occasioned by Long's failure to perform his contract.

On September 23, 1890, the defendants executed their bond, whereby
they acknowledged themselves indebted to J. R. Addison, and the other
sureties in the Addison bond, in the penal sum of $270,000. This
bond was subject, however, to the following condition; that is to say:

"The conditions of the above obligation are such that whereas, one J. T.
Long has entered into a contract with Pierce county, a corporation of the state
of Washington, wherein the above-bounden J. T. Long, for a consideration
therein named, to be paid, has agreed to make certain improvements, by erect-
ing, building, and furnishing materials for a court house and jail, to be
built in the city of Tacoma, county of Pierce, state of Washington, in accord-

ance with the said contract and plans and specifications therefor, and in said contract agrees to pay all persons performing labor upon said buildings and doing said work, and all persons who shall furnish said J. T. Long with goods or provisions of any kind, and all claims for damages; and whereas, J. R. Addison, W. H. Fife, Van Ogle, Jacob Ralph, Charles T. Uhlman, J. B. Catron, T. A. Bringham, L. L. Devoin, J. C. Mann, and W. B. Kelley have become sureties for the said J. T. Long, to the said county of Pierce, to the amount of $270,000, in good and lawful money of the United States, and have bound themselves as such sureties to the said county for the performance by the said J. T. Long of all the covenants and agreements entered into by the said J. T. Long with said county of Pierce for the building of the court house and jail above referred to in accordance with a certain contract entered into by the said J. T. Long and the said county of Pierce: Now, therefore, the condition of the above obligation is such that if the said J. T. Long shall well and truly perform and fulfill the conditions of the contract entered into between him and the said county of Pierce, in manner and form as he is therein required to do, and at all times herein save harmless the said J. R. Addison and others, their heirs, executors, and administrators, of and from the obligation which the above-named sureties have entered into with the said J. T. Long and the said county of Pierce, and of and from all action, cost, and damage for and by reason thereof, then this obligation shall be void, otherwise to remain in full force and effect."

After the execution and delivery of the foregoing bonds, Long entered upon the execution of his contract with Pierce county. In so doing, he purchased of the complainant the Brown & Haywood Company certain materials and supplies, which were used in the construction of the buildings, and which he failed to pay for in full, and for which said last-mentioned company on January 29, 1896, recovered, in a contested action instituted by it in the superior court of Pierce county against Long and his sureties, Addison and others, on said Addison bond, the sum of $6,003.31. On the same day (January 29, 1896) certain firms and corporations, named Wheaton, Reynolds & Co., Warren & Hines, and the Roberts Manufacturing Company, each recovered judgments in the same court on different causes of action instituted by them against Long and his sureties on the Addison bond, for materials and supplies furnished to Long, and used by him in the construction of said buildings. The judgment debtors in these actions, namely, Long, Addison, and all the other sureties on Long's bond to Pierce county, proved to be insolvent, so that the judgments could not be made. The three last-mentioned judgments were, prior to the institution of this suit, assigned to the complainant the Brown & Haywood Company, so that, with its own judgment, said last-named company is the holder and owner of claims, reduced to judgment, against Long and Addison and the other sureties on that bond, for material furnished for and used in the construction of the court house and jail, in the aggregate sum of $20,916.38. The Brown & Haywood Company now institutes this suit, joining with itself, as co-complainants, Addison and the other sureties on the Addison bond, who are the obligees in the bond now sued on, against the obligors in said bond, namely, Ligon and others, to recover the aggregate amount of said judgments. The theory of complainant's bill is that its judgment debtors, the sureties on the Addison bond, have a security consisting of the underwriting bond of the defendants, to which it (the complainant) is equitably entitled to resort for the satisfaction of its judgment against its insolvent debtors. This is claimed on two

grounds: First, that complainant is entitled to be subrogated to the rights of its debtors, as against the defendants; and, second, is entitled to avail itself, in equity, of the promise made by the defendants to the obligees in the bond sued on, for its (the complainant's) benefit.

The defenses are: First, that because Long, who is mentioned as principal in the Addison bond, never in fact signed it, and because said Addison bond bears date four days before the date of the contract referred to therein, the said bond, as well as the bond sued upon, executed by the defendants, is without consideration and void. These defenses, if they ever had any merit, are concluded by the recitations of the bond in suit. This bond recites the making of the contract between Long and Pierce county, the due execution of the Addison bond by Addison and the other sureties, and their obligations to Pierce county thereunder; and the defendants ought to be estopped from asserting the contrary. Again, this contract and the two bonds must be held, notwithstanding their dates, to take effect and become operative as of the date of delivery. In addition to this, the liability of Addison and the other sureties in that bond has also been established by the judgments of the superior court of Pierce county already referred to.

It is next contended that because the bond in suit recites that the Addison bond was given to Pierce county, and because the Addison bond appears in fact to have been given to the state of Washington, as obligee, there is such a variance as is fatal to this action. I fail to appreciate the force of this objection. The Addison bond was, by its terms, manifestly for the benefit and security of Pierce county, and no more correct recitation could have been made than to say, as appears in the bond in suit, "that whereas, Addison and others have become sureties for Long to Pierce county." This is a correct recital of the fact and main purpose of the Addison bond, and there is no ground for the claim of fatal variance.

The next defense is that the bond sued on is one of mere indemnity, and that the obligees in the bond are not shown to have been actually damnified. In considering this defense, the language employed in the condition of the bond must be carefully considered. It first recites that Long has entered into a contract with Pierce county to construct a court house and jail, and has, in and as a part of said contract, agreed to pay for all materials furnished and used in such construction, and that Addison and others, sureties on the Addison bond, and obligees in the bond in suit, had become sureties for the performance by Long of all the covenants and agreements entered into by Long. The condition then proceeds to state that if Long shall well and truly perform and fulfill "said" contract (manifestly referring to Long's contract with Pierce county), and if he shall save Addison and the other sureties harmless from their obligations as such sureties, and if he shall save Addison and the other sureties harmless from all actions, cost, and damage by reason of their signing said Addison bond as sureties for Long, the bond sued on shall be void; otherwise (that is to say, if Long fails to perform his agreements with Pierce county, or if he fails to save Addison and the other sureties harmless from obligations, or if he fails to save them harmless from actions, cost, or

damage), the bond remains in full force and effect. It thus appears that the bond sued on is, in effect, an agreement that Long shall carry out the terms of his contract with Pierce county, including the payment to subcontractors for all materials furnished by them, and used in the construction of the court house and jail in question. It is also an agreement to save Addison, and the others who were sureties on Long's bond, harmless from the obligation and liability which they had assumed as sureties on that bond, and, in addition thereto, is an agreement to save Addison and others harmless from actions, cost, and damages. Such being the condition of the bond, it is more than a bond for indemnity, and the actual payment of the judgments obtained by the Brown & Haywood Company and others against Addison and others is not a necessary prerequisite to liability of defendants in this action. Johnson v. Risk, 137 U. S. 300, 11 Sup. Ct. 111; Bank v. Leyser, 116 Mo. 51, 22 S. W. 504; Locke v. Homer, 131 Mass. 93; Farnsworth v. Boardman, Id. 115; Shattuck v. Adams, 136 Mass. 34; Conner v. Reeves, 103 N. Y. 527, 9 N. E. 439; Jones v. Childs, 8 Nev. 121. Tested by the doctrine of these authorities, and many others to which my attention is called, there was certainly a breach of the bond in suit when judgments were rendered against Addison and others on the several causes of action already referred to. There was also another breach of the condition of the bond in suit when Long failed to pay the complainant, and other parties who secured judgments which have been assigned to the complainant, as already stated, for the materials furnished by them for the construction of the court house and jail in question. Long, it appears by his contract with Pierce county, had agreed to pay all such claims, and the condition of the bond in suit recites such an agreement. The Addison bond bound the obligors to pay Long's obligations to material men, and this obligation is recited in, and its performance is guarantied by the defendants in and by, the bond in suit. Long's failure to pay these claims resulted in judgments against Addison and others. The defendants in this case, by their bond, agreed that no such judgments should be rendered against Addison and others. The defendants therefore could be made to respond to Addison and others, and the other complainants, exclusive of the Brown & Haywood Company, if they were the meritorious complainants in this case; and that, too, irrespective of whether Addison and others had, prior to bringing their suit, actually paid the judgments so rendered. See cases supra. If the complainants Addison and others could have recovered, the case clearly falls within the principle entitling the complainant the Brown & Haywood Company to be subrogated to the rights of Addison and others. The defendants' underwriting bond is a security taken by the Brown & Haywood Company's debtors, Addison and others, which, by reason of their insolvency, the Brown & Haywood Company is entitled to resort to, as an equitable asset, to satisfy its demands against its principal debtor.

But it is urgently contended by defendants' counsel that Long and Pierce county made some new agreements, without the knowledge or consent of Addison and others, sureties on Long's first bond, which varied the original contract, for the faithful performance of which

the Addison bond was given, and that such action of the principals relieved Addison and others from liability on that bond. This issue was presented, fully heard, and determined against Addison and others, in the several suits referred to, in the superior court of Pierce county. The judgments rendered in such suits, if not collusive,—and there is no evidence that they were,—are prima facie evidence in this case of the liability of Addison and others to the complainant. Trust Co. v. Robinson, 24 C. C. A. 650, 79 Fed. 420. This prima facie lia-bility has not been overcome by any evidence in this case.

It is also urgently contended by defendants' counsel that the proof shows that Long and Pierce county, with the consent of Addison and others, who were Long's sureties, on January 7, 1892, made a sub-stantial change in the original contract between Long and Pierce county, and that while such change so made with the consent of Addi-son and others, the sureties, constituted no defense in favor of Addi-son and others in the suits of the Brown & Haywood Company and others against them, already referred to, it would constitute a defense in favor of the defendants in this case in a suit instituted by Addison and others on the bond in suit, and that, as a necessary consequence thereof, the complainant the Brown & Haywood Company, which must work out its remedy through the right of Addison and others, cannot recover in this case. It may or may not be that the change made by the modified contract of January 7, 1892, was so material as to re-lieve the defendants from liability on their bond, if Addison and oth-ers were the meritorious complainants; but, whether so or not, such change in the original contract cannot affect the complainant the Brown & Haywood Company's right to recover for the materials sup-plied by it to Long. As already observed, the bond in suit, although made to Addison and others as nominal obligees, contains a stipula-tion requiring the defendants, in effect, to pay material men's claims, and thus conform to the obligation imposed on Addison and others by their bond and by the laws of the state of Washington; and even though the defendants might be released from liability to the obligees named, by reason of the change in the contract, they are not released from their liability incurred in favor of material men. I need not discuss this question at any length, as I understand it is put at rest by the recent decision of the circuit court of appeals for the Eighth cir-cuit in the case of U. S. v. National Surety Co., 92 Fed. 549. This case holds, in effect, that where an act of congress provides that a con-tractor for public works should give a bond conditioned, among other things, to pay the claims of subcontractors, the subcontractors may recover on that bond, notwithstanding material changes made in the contract between the principal contractor and the government,—such changes, in fact, as would have precluded a recovery on the part of the government itself. Applying the doctrine of that case, and of the several cases cited as authority therein, there is but one conclusion to be reached upon this last contention of the defendants' counsel; and that is that the defendants are liable in this case to the complain-ant the Brown & Haywood Company for the amount of its demands for materials furnished to Long, as fixed by the judgments recovered by it and the other parties who have assigned to it, as already stated.

Complainant's equity may consist in the right to be subrogated to the securities held by its debtor, or it may consist in its right to enforce an agreement made by the defendants for its benefit, under the doctrine of the case of Knapp v. Insurance Co., 29 C. C. A. 171, 85 Fed. 329. There will be a decree requiring the defendants to pay to the complainant the sum of $20,916.38, the aggregate amount of the judgments recovered, with interest thereon from January 29, 1896. Counsel may compute the same, and prepare a decree, and submit it to the court.