CRUMP & TREZEVANT, INC., COMPLAINANT, APPELLEE, *v.* CONTINENTAL CASUALTY COMPANY, DEFENDANT, APPELLANT.

*(Nashville,* December Term, 1932.)

Opinion filed January 7, 1933.

GAILOR, BEJACH & McLAIN, for complainant, appellee.

W. W. SWIFT, for defendant, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit on a certain bond, hereinafter considered. There was a decree for complainant for $10,563.75 from which the defendant, Continental Casualty Company, the surety or guarantor, appealed. The Court of Appeals affirmed the decree of the chancellor and we have granted the casualty company's petition for *certiorari*.

Crump & Trezevant is a corporation engaged in the business of making and negotiating loans on real estate, but far the greater part of its business consists in lending directly or indirectly money of the Metropolitan Life Insurance Company.

Many building loans are made by Crump & Trezevant. It supplies funds to customers owning desirable real estate in Memphis for the purpose of erecting houses on their lots, procuring notes and trust deeds on forms acceptable to the Metropolitan Life Insurance Company, and paying out the money to the borrowers as the building progresses. When the building has reached a certain state of completion, the loan will be taken over by the insurance company and the securities transferred to it. For its services in this connection, Crump & Trezevant receives a commission agreed on with its customer and also receives, for looking after the loan, one-half of one per cent per annum on the amount of the loan. That is to say Crump & Trezevant collects six per cent interest and accounts to the insurance company for five and one-half per cent interest. The insurance company will not take a loan unless the appraised value of the property is double the value of such loan.

Miss Evelyn V. Kerby on June 21, 1929, made application to Crump & Trezevant for a loan of $20,000 to be secured by a trust deed upon the fee title of a lot on

Union Avenue in Memphis. The purpose of this loan was to erect an apartment house and garage on said property, the house to cost $32,250 and the garage to cost $1750. The lot was valued at $9,000.

Crump & Trezevant agreed to make the loan upon the execution of the bond here in suit. The trust deed was executed, the building started, most of the amount agreed to be loaned paid out on account of the work, but the building was not completed. P. E. Kerby, a brother of the borrower representing her throughout the transaction, notified Crump & Trezevant that his sister would be unable to go on with the building. Crump & Trezevant finished the building after making demand on the casualty company to complete it, which the latter refused to do.

The decree in favor of Crump & Trezevant represents the cost of completing the house according to the agreement between the parties and the plans and specifications plus the difference in cost between certain inferior materials put in by the Kerbys and the materials called for by the plans and specifications.

The casualty company insisted that Crump & Trezevant should foreclose its trust deed and still insists that the measure of any recovery of Crump & Trezevant on the bond would be the difference between the amount brought by the property (the house unfinished) at a foreclosure sale and $20,000.

So it is, the principal question before us is as to the measure of recovery, if any, which Crump & Trezevant is entitled to upon the bond. The solution of this question depends on whether the casualty company is to be regarded as a guarantor or an indemnitor.

If the contract is one of guaranty, upon breach of its conditions, the liability of the obligor for per-

formance of its affirmative covenants becomes absolute. If the obligor refuses to perform, it logically follows that the obligee should recover the cost of performance. If the contract is one of indemnity, the recovery must be limited to the actual damage proven to have been sustained by the obligee.

As suggested by the West Virginia Court in a case somewhat similar, the inquiry necessitates a consideration of "the distinction between a bond or other contract binding the obligated parties to do particular things for prevention of injury and damage to the obligee, and a contract or mere indemnity, binding the obligors to make good an injury or damage, or compensate for it after occurrence thereof. In the former case, the obligee or covenantee may sue for and recover the money the obligors or covenantors bound themselves to pay, by way of indemnity against liability, without having paid the same. In the latter case, he must have paid the money and so suffered actual loss, before he can sue for the breach of the contract." *Stuart* v. *Carter,* 79 W. Va., 92, 90 S. E., 53, L. R. A., 1918D, 1070.

The New York Court draws the distinction in these words:

"Whether an action lies or not depends upon the true intent and meaning of the covenant; if it is simply to indemnify, and nothing more, then damage must be shown before the plaintiff can recover; but if there is an affirmative covenant to do a certain act or pay certain sums of money, then it is no defense in such an action to say that the plaintiff has not been damnified. . . . Where indemnity alone is expressed, it has always been held that damage must be sustained before a recovery can be had; but where there is a positive agreement to

do the act which is to prevent damage to the plaintiff, then action lies, if the defendant neglects or refuses to do such act.'' *Re Negus,* 7 Wend., 499.

     The bond upon which this suit is brought, among other things, contains the following:

''Whereas, the Obligee desires a guaranty from the principal that he will complete the building as described in accordance with the plans and specifications agreed on, and hereby referred to, and will deliver same free and clear of any mechanic's liens or lien of materialmen, or liens of any kind which might be lawfully established against the above described real estate and improvements thereon, superior to said mortgage or trust deed by reason of or on account of the construction of the improvements above described.

''Now therefore, the condition of this obligation is such: That if the Principal shall well. and truly erect and complete or cause to be erected and completed the building aforesaid according to all the terms, conditions, and requirements of the aforesaid agreements, free and clear of any and all liens or claims for liens or encumbrances arising from claims of mechanics, materialmen, laborers or others for work or labor performed or for materials, machinery, fixtures, or equipment furnished or installed in or about the erection, construction and completion of said building, which are superior to said mortgage, and shall indemnify and save harmless said Obligee from any loss or damage arising by reason of the failure of the Principal to erect and complete the building aforesaid and on account of any and all claims, costs, suits, and damages of whatsoever nature and description that may be incurred or suffered by said Obligee on account of any such claims or liens of mechanics,

materialmen, laborers or others, and which are superior to said mortgage, that may hereafter arise against such property and improvements and against said premises, then this obligation shall be null and void, otherwise it shall remain in full force and effect:''

Undoubtedly this bond contains affirmative covenants. It is conditioned that the building described shall be well and truly erected and completed, according to specifications, free and clear of all liens. True it goes on to provide that the obligee shall be indemnified and saved harmless from any loss or damage arising by reason of default of the principal, but an instrument such as this may include both a contract of guaranty and a contract of indemnity and frequently does. *Equitable Trust Co.* v. *National Surety Co.*, 214 Pa. St., 159, 6 Anno. Cas., 465. This bond plainly obligates its makers to complete the building and to discharge all liens thereupon which might be superior to the lien of the trust deed taken by the obligee.

When, therefore, the Kerbys abandoned the work, notified Crump & Trezevant that they were unable to complete the building, and Crump & Trezevant conveyed such information to the casualty company, it became the duty of the casualty company to fulfill its covenant and complete the building itself.

It has been quite generally held since *Holmes* v. *Rhodes*, 1 B. & P., 638, that *non damnificatus* was not a proper plea to an action upon a covenant of guaranty.

''When a condition was to discharge or acquit the plaintiff from a bond or other particular thing, *non damnificatus* was not a good plea, but the defendant should set forth affirmatively the special matter of performance; but if the condition be to acquit from damage merely,

such a plea is good." *Lathrop* v. *Atwood,* 21 Conn., 117.

If A secures the obligation of B and C guarantees to A that B will discharge the obligation, upon B's default, A is entitled to recover from C the amount of the obligation of B that C guaranteed, regardless of whether A has been called on to pay B's obligation. This has been frequently held. *Holmes* v. *Rhodes, supra; Re Negus, supra; Belloni* v. *Freeborn,* 63 N. Y., 383, and cases cited; *Thomas* v. *Allen,* 1 Hill (N. Y.), 145.

In a number of cases it has been held that a bond conditioned for the performance of the covenants, conditions, and agreements of a building contract, due and prompt payment, and discharge of all indebtedness that might be incurred by the contractors, completion of the building free from mechanics' liens, etc., was a contract of indemnity against liability, the condition of which was broken by the fixing of a mechanics' lien on the property. Recovery was allowed on such bonds to the owners of the property whether they had actually paid off the mechanics' liens or not. *Stuart* v. *Carter, supra; Friend* v. *Ralston,* 35 Wash., 422, 77 Pac., 794; *Kiewit* v. *Carter,* 25 Neb., 460, 41 N. W., 286; *Brown & H. Co.* v. *Ligon,* 92 Fed., 851; *Orinoco Supply Co.* v. *Shaw Bros. Lumber Co.,* 160 N. C., 428, 76 S. E., 273, 42 L. R. A. (N. S.), 707.

In *Equitable Trust Co.* v. *National Surety Co., supra,* the bond of a subcontractor was conditioned that he would complete the work in accordance with the plans for a fixed price, that no mechanics' liens should be filed against the premises, that he would keep pace with other subcontractors in the performance of his work. Upon the subcontractor's default, the mortgagee of the property completed at its own cost the work undertaken by

this subcontractor and was allowed a recovery upon the bond for the amount thus expended.

Our own cases fully recognize the liability of a guarantor upon the principal's default and note the distinction between the liability of a guarantor and that of an indemnitor, although these particular terms are not always employed. *Hunter* v. *Dickinson,* 29 Tenn. (10 Humph.), 37; *Irvine* v. *Brasfield,* 57 Tenn. (10 Heisk.), 425; *Finley* v. *Casualty Co.,* 115 Tenn., 592; *Cayard* v. *Robertson,* 123 Tenn., 382. The last two cases note the distinction between policies or bonds insuring against liability and such instruments insuring against loss from liability.

In the case before us Crump & Trezevant had an interest in the completion of this building beyond the interest of an ordinary mortgagee. This interest required the completion of the building and the putting of the premises in such condition as that the loan to be made thereupon could be negotiated to the insurance company. By such negotiation Crump & Trezevant justified its claim to a commission in respect to the loan and also stood to earn one-half of one per cent upon the loan. It is possible that Crump & Trezevant was required to underwrite the loan when it was transferred to the insurance company, in which event Crump & Trezevant was interested to see that the building was completed according to agreement to afford better security, if the borrower defaulted and the loan was turned back.

This bond was written by the casualty company after considerable negotiation and after one bond tendered by it had been refused by Crump & Trezevant. The parties were entitled to enter into such a contract and we see no reason for declining to give effect to its terms.

We are referred by counsel of the casualty company to *Province Security Corp.* v. *Maryland Casualty Co.* (Mass.), 168 N. E., 257, and *Trainor Co.* v. *Aetna Casualty & Surety Co.*, 49 Fed. (2d), 769. Counsel, however, concede that the bond considered in the first case was an indemnity bond. With due respect, we are not prepared to agree to all that was said in the second case.

It is further said in behalf of the casualty company that it should be relieved of all liability on the bond in suit because of the failure of Crump & Trezevant to communicate certain information, which it is urged should have been communicated by that concern, upon the execution of the bond. In other words that the suit should be dismissed because of the concealment of material facts by Crump & Trezevant.

It appears that there was another corporation known as the Memphis Bond & Mortgage Company, of which corporation Crump & Trezevant owned all the stock. At about the same time that Crump & Trezevant agreed to make the $20,000 loan to the Kerbys to be secured by a first mortgage, the Memphis Bond & Mortgage Company agreed to make the Kerbys a loan of $5,000 on the same property to be secured by a second mortgage. The $5,000 loan was made and secured by a second mortgage, recorded after the first mortgage securing the $20,000 loan.

Crump & Trezevant had no direct negotiations with the casualty company. P. E. Kerby undertook to procure the bond and dealt with the local agents. The local agents wrote to the Chicago office of the casualty company describing the loan, stating that Miss Kerby had a good title to the lot, that Kerby's previous business

had been satisfactory and recommended the execution of the bond. The Chicago office replied to the local agents agreeing to execute the bond and saying, among other things, that an assurance should be obtained from Crump & Trezevant that a gross loan of $20,000 was being made by it. The local agent did not see Crump & Trezevant himself. He sent P. E. Kerby to Crump & Trezevant and Kerby procured from the latter a letter in which Crump & Trezevant said that it was making a loan of $20,000 on the property secured by a first mortgage. This letter was turned over to the local agents of the casualty company.

So far as the record shows Crump & Trezevant wrote exactly as requested by Kerby. The statement contained in the letter was perfectly true. Nothing was said about the second mortgage.

The Court of Appeals was of opinion that no duty rested upon Crump & Trezevant, in the absence of an inquiry, to communicate any information to the casualty company with reference to the proposed second mortgage. For this conclusion the Court cited *Sewing Machine Co.* v. *Jackson,* 83 Tenn. (15 Lea), 418. Likewise supporting this conclusion we may refer to *Hubbard* v. *Fravell,* 80 Tenn. (12 Lea), 305.

Aside from the foregoing, however, information with reference to the second mortgage was material to the casualty company in two respects only. It reflected on the financial status of Miss Kerby and it reflected on the condition of this particular title.

While under the authorities just above referred to we do not think it was incumbent on Crump & Trezevant to supply the casualty company with information about Miss Kerby's solvency or about this title, if such

a duty had existed, failure to discharge the duty in this case did not affect the hazard of the bond. The $5,000 borrowed on the second mortgage was all used to discharge a prior existing lien on the property. Miss Kerby owed no more after she borrowed this $5,000 than she did before, and the property was no more heavily encumbered after the execution of the second mortgage. So any concealment of the existence of the second mortgage was the concealment of an immaterial fact.

■ Counsel for the casualty company refer us to *Mills* v. *Unger* (Calif.), 9 Pac., 833, and other cases, holding that a mortgagee who forecloses and bids in the property for the amount of his debt has no recourse on the bond which he took to secure the erection of a building on the premises. These cases are not in point. The Memphis Bond & Mortgage Company did foreclose its second mortgage and bid in the property for its debt, subject to the first mortgage. If the identity of the Memphis Bond & Mortgage Company be disregarded and the bid be treated as the bid of Crump & Trezevant, still Crump & Trezevant did not bid all of its debt, since it had taken a prior mortgage of $20,000, upon which it may yet take a loss.

In our view of the case, the things that happened after the Kerbys abandoned the building need not be considered. Upon default of the Kerbys, the liability of the casualty company for the completion of the building, or the cost of such completion, became fixed.

The Court of Appeals has dealt with the case comprehensively and other questions made are satisfactorily disposed of in the opinion of that court. The material facts have been established by a concurrent finding of the chancellor and the Court of Appeals. The judgment of the Court of Appeals is affirmed.