ROBERTSON, SUPERINTENDENT OF BANKS, *v.* CITIZENS'
BANK OF WATERTOWN *et al.*

(*Nashville,* December Term, 1934.)

Opinion filed Dec. 14, 1934.

C. C. DAVIS, of Watertown, W. B. WILLIAMS, of Lebanon, and JOSEPH HIGGINS, of Nashville, for appellants.

W. R. Chambers, L. H. Walker, and, T. G. Hinson, all of Lebanon, and R. L. Forrester, of Watertown, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

The branch of this case before us is an effort on the part of the superintendent of banks, in his official capacity and as receiver, to recover upon a bond executed for the protection of the depositors and creditors of the Citizens' Bank of Watertown, under the provisions of sections 5963 and 5968 of the Code. There was a decree in favor of the complainant by the chancellor, which was affirmed by the Court of Appeals, and the defendants, sureties on the bond, have filed a petition for *certiorari*.

In August, 1927, after examination of the affairs of the said Citizens' Bank, the superintendent of banks required the execution of a bond in the sum of $15,000, for the protection of depositors and creditors of the Citizens' Bank, as a condition of that bank being permitted to remain open. Such action on the part of the superintendent of banks was fully authorized under the statutes mentioned, and his action in this particular is not now questioned.

Upon giving the bond, the Citizens' Bank was permitted to remain open and did remain open and continued business until September 25, 1928. Upon that date an arrangement was undertaken between the Citizens' Bank and the Bank of Watertown whereby the latter bank acquired the assets and assumed the liabilities of the former bank. All the assets of the Citizens' Bank were turned over to the Bank of Watertown and the

Citizens' Bank ceased to do business. The Watertown Bank continued in operation for about six weeks after the consolidation. On November 5, 1928, the Watertown Bank closed. The superintendent of banks at once filed a bill to wind up the affairs of that institution and was duly appointed receiver.

The Citizens' Bank was not named as a party defendant to the receivership bill filed against the Bank of Watertown, but, before final decree, the Citizens' Bank was duly made a party to that cause. Perhaps it was not necessary that the Citizens' Bank should have been made a formal party, since it had quit business, ceased to function, and the Bank of Watertown was discharging all the activities of the Citizens' Bank and had acquired its properties. *Lowther et al.* v. *Lowther-Kaufmann Oil & Coal Co. et al.*, 75 W. Va., 171, 83 S. E., 49; *Dancel et al.* v. *Goodyear Shoe Machinery Co.* (C. C.), 134 F., 157.

By section 6028 of the Code, regulating the consolidation or merger of banks, the plan of merger or consolidation must be submitted to the superintendent of banks and the written approval of that official obtained "before such . . . merger or consolidation becomes effective." It appears from the concurrent finding of the chancellor and the Court of Appeals in this case that the superintendent of banks declined to approve the consolidation or merger of these two banks unless the Bank of Watertown procured and filed with him a bond of $15,000 to take the place of the bond in like sum previously filed with the superintendent of banks, and above mentioned, for the protection of the depositors and creditors of the Citizens' Bank. The latter bond was never executed.

There was much controversy herein as to whether the

superintendent of banks had, as a matter of fact, approved this consolidation or merger. This issue is foreclosed in this court, in view of the concurrent finding of the lower courts. Both courts found that the union of the two banks was not approved by the superintendent of banks and that accordingly there had been no valid consolidation or merger. There is much discussion in the briefs accompanying the petition for *certiorari* as to whether there was a *de facto* consolidation or merger of the two institutions and as to the effect of such *de facto* consolidation or merger. As will hereafter appear, we find it unnecessary to consider these questions in this particular branch of the litigation. Nothing is before us now except the right of the superintendent of banks to recover on the bond executed in behalf of the Citizens' Bank for the protection of its depositors and creditors, and, in our opinion, a recovery must be awarded on that bond, whether the consolidation or merger was legal or not.

The first proposition of the sureties upon the bond is that the superintendent of banks has no standing to sue on the aforesaid bond executed in behalf of the depositors and creditors of the Citizens' Bank. It is said that no insolvency bill was ever filed against the Citizens' Bank, no proceedings such as outlined by the statute ever taken against that bank, that the superintendent of banks was never appointed receiver of the Citizens' Bank, and his action to recover on the said bond is accordingly not maintainable. It is true that no separate suit was ever brought against the Citizens' Bank.

In the suit brought to wind up the affairs of the Bank of Watertown, a petition was filed by the superintendent of banks, referring to the execution of the bond for the

protection of the depositors and creditors of the Citizens' Bank, pointing out that he had declined to approve the consolidation or merger of the two banks until another bond was executed in lieu of the first bond, suggesting that, in default of his approval, the consolidation or merger was illegal, and asking the instructions of the court as to how he should deal with the assets that could be identified as the former assets of the Citizens' Bank.

In response to this petition, on June 22, 1929, the chancellor ordered that the receiver separate as far as practical what were the assets of the Citizens' Bank from the assets of the Bank of Watertown and that he file a report showing the assets and liabilities of the Citizens' Bank and "that the receiver as such bring such suits as he may deem advisable for the collection of any and all assets or claims of the Citizens' Bank or the Bank of Watertown; that he also report any other fact deemed material to the administration of the assets of the Citizens' Bank." Another order entered on the same day required a somewhat more detailed report as to the assets of the Citizens' Bank and what had become of them.

It is obvious from the foregoing that the chancellor by these orders undertook to confer upon the superintendent of banks about all the authority respecting the affairs of the Citizens' Bank that he would have conferred upon him had a formal insolvency bill been filed under the statute against that institution. The statutes regulating the supervision and liquidation of banks (section 5939 et seq. of the Code) prescribe most of the duties of the superintendent of banks acting as receiver of such institutions in liquidation.

As we have previously mentioned, the Citizens' Bank was duly made a party to the original suit before the

suit on this bond was filed. Under the orders of the court, the superintendent of banks was acting as receiver of the Citizens' Bank as well as receiver of the Bank of Watertown. We accordingly think that the challenge herein of the right of the superintendent of banks, acting as receiver of the Citizens' Bank, to bring suit on this bond is a mere collateral attack upon the appointment and the authority of such receiver.

Where the court appointing a receiver has jurisdiction of the subject-matter and of the parties, a collateral attack upon the appointment of a receiver, or a collateral attack questioning the power conferred upon the receiver, will not be entertained. *Slaughter* v. *Railroad*, 125 Tenn., 292, 143 S. W., 603. Such appears to be the universal rule. 53 C. J., 82.

In addition to the foregoing, however, the right of the superintendent of banks to maintain suit on the bond in question does not rest on his appointment as receiver of the bank for the protection of whose depositors and creditors the bond was taken. The bond was not an asset of the bank at any time. It was a security taken by the superintendent of banks, under authority of statute, for the benefit of such depositors and creditors. The bank itself could not use this security or handle it as an asset in any way. True, section 5968 of the Code provides, upon the contingency named, that "the sureties on said bond shall make good their undertaking to the superintendent of banks as receiver." This merely means that the undertaking shall be made good to the superintendent of banks "as" or "while" he is acting as receiver. It was contemplated by the statute that a call on such bond would not be made until the superintendent of banks had been appointed receiver.

The bond, however, runs to the "superintendent of banks, his successors in office, in his official capacity" (Code, section 5963), and the right of action is in the superintendent of banks rather than in the receiver. It is to be remembered, of course, that the superintendent of banks is to be appointed receiver in all cases where suits are brought to wind up an insolvent bank. Code, section 5969.

This suit is brought by the superintendent of banks both as receiver of the Citizens' Bank and in his official capacity. We are of opinion that he is entitled to maintain the suit in either role, by reason of section 5968.

This brings us to a consideration of the bond sued upon, and, since its meaning and effect is a matter of controversy, we set out the instrument:

"The Superintendent of Banks of the State of Tennessee pursuant to chapter 20 of the Public Acts of 1913 has ascertained that the said Citizens' Bank is in an unsafe condition, and has made a requirement that said Bank execute a good and solvent bond for an amount sufficient to protect its depositors and unsecured creditors and permission from said Superintendent of Banks for the said Citizens' Bank to continue business is based on the execution of this bond.

"Now if the said Citizens' Bank shall pay all sums owing to its depositors and unsecured creditors as they stand at present or as they may appear at any time while said Bank is allowed by the Superintendent of Banks or his successors to remain open and transact its business, then this obligation shall be void; otherwise to remain in full force and effect."

This bond must, of course, be construed in connection with the statutes in effect at the time of its

execution. These statutes, of course, enter into the bond and control its interpretation. The statutes are as follows:

5963. "Whenever the superintendent of banks shall find, as a result of any examination had under the provisions of this article, that any person, firm, or corporation doing a business of banking is in an unsafe condition or is insolvent or that it is unable to meet its obligations in the ordinary course of business, it shall be his duty to, in case the bank is in an unsafe condition or is insolvent or unable to meet its obligations in the ordinary course of business, require the said bank or its officers or directors to execute a good and solvent bond in an amount sufficient to protect its depositors and other unsecured creditors, payable to the said superintendent of banks, his successors in office, in his official capacity, for the forthcoming and payment of said obligations to depositors and unsecured creditors under the penalties hereinafter provided for."

5968. "In all cases of the liquidation of a bank as herein provided, where a bond has been previously taken for the protection of depositors, the same shall run for a period of twelve months only from the date of the closing of the bank, and at the expiration of this period of twelve months the sureties on said bond shall make good their undertaking to the superintendent of banks as receiver, unless said bank shall be fully liquidated; and if only partially liquidated, shall nevertheless pay off and discharge their bond in full, if necessary, on the demand of the receiver; provided, on final liquidation, said bondsmen may be reimbursed to the extent of collections over and above the payment in full of depositors and creditors."

■ It is urged in behalf of the sureties that the bond is one of indemnity; that the affairs of the Citizens' Bank have not yet been wound up; that the record contains no adequate showing of its assets and liabilities; that it cannot be said as yet that its depositors and creditors will sustain any loss; and that therefore there cannot now be any recovery on the bond.

We think this construction of the bond is erroneous. It is not an indemnity bond. On the contrary, it is a guaranty bond. It was taken, under Code, section 5963, "for the forthcoming and payment of said obligations to depositors and unsecured creditors." Code, section 5968, provides that the bond shall run for a period of twelve months only from the date of the closing of the bank, and at the expiration of that period the sureties shall make good their undertaking, unless the bank be fully liquidated; that if the bank be only partially liquidated, at the end of twelve months, the sureties shall nevertheless pay off and discharge the bond in full, if necessary; that, on final liquidation, the bondsmen may be reimbursed to the extent of collections over and above payment in full of the depositors and creditors. We think this bond is an absolute guaranty that the depositors and creditors of the particular bank shall be paid within twelve months from the closing of the bank.

In *Crump & Trezevant, Inc.*, v. *Continental Casualty Co.*, 165 Tenn., 473, 55 S. W. (2d), 762, we undertook to point out the distinction between a bond binding the obligated parties for the prevention of injury and damage and a bond binding the obligors to compensate for injury and damage after the occurrence thereof. The bond here is conditioned that the "Citizens' Bank shall pay all sums owing to its depositors and unsecured credi-

tors . . . at any time while said bank is allowed by the superintendent of banks or his successors to remain open and transact its business.'' This is an affirmative covenant to pay certain sums of money, upon certain conditions, and it is not a defense that the obligees have not so far been damnified. Code, section 5968, in all cases of the liquidation of a bank, extends the time for performance of this covenant twelve months after the bank is closed.

We have heretofore said that in this suit we thought it unnecessary to discuss the validity and effect of the attempted consolidation or merger of the two banks.

▆ The consolidation or merger of banking corporations is now regulated in some detail by chapter 29 of the Public Acts of 1931. Prior to that statute, however, liens upon the properties of the constituent corporations remained unaffected by a consolidation or merger. *The Key City*, 14 Wall., 654, 20 L. Ed., 896; *Central R., etc., v. Georgia*, 92 U. S., 665, 23 L. Ed., 757. Since, as we have noted, the bond in suit was not an asset of either of these banks, no arrangement between those two banks could have affected the rights of the obligees of the bond. These obligees stand upon even higher ground than lien-holders.

Regardless, therefore, of the validity of the consolidation of these two institutions, the superintendent of banks had no authority to impair the rights of creditors of the Citizens' Bank by a surrender of the bond taken for their protection, certainly until other adequate security was substituted for such bond. The superintendent of banks, it is conceded, did not surrender the bond upon which this suit is brought. The bond therefore stands for the protection of the depositors and

creditors of the Citizens' Bank, even if that bank be thought to have legally merged into the Bank of Watertown.

The opinion of the Court of Appeals fully and satisfactorily discusses the questions of estoppel, novation, and other matters debated by counsel.

We find no constitutional objection to the provisions of section 9 of chapter 30 of the Public Acts of 1927 carried into the Code at section 5968 and heretofore set out. This statute merely prescribes the nature of the bond to be taken by the superintendent of banks under certain circumstances. The sureties executing this bond were under no compulsion to do so. *Van Tuyl* v. *Carpenter*, 135 Tenn., 629, 188 S. W., 234, in which it was suggested that provisions of the New York banking statute were unconstitutional, is not in point here. It was believed by the court that this statute conferred judicial functions on an administrative officer and made no proper provision for a judicial hearing. Section 9 of chapter 30 of the Public Acts of 1927 confers no judicial function upon the superintendent of banks. It enjoins the duty upon him to proceed upon the bond dealt with, if depositors and creditors of the bank are not paid off within twelve months after litigation.

The petition for *certiorari* is accordingly denied.